# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0404

Lawrence DeLisio, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued May 10, 2011                                      Decided August 24, 2011)

*Christopher Aldo Porco*, of Washington, D.C., for the appellant.

*Rudrendu Sinhamahapatra*, with whom *Will A. Gunn,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Gayle E. Strommen*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and LANCE, *Judges*.

LANCE, *Judge*, filed an opinion concurring in the result.

KASOLD, *Chief Judge*: Vietnam veteran Lawrence DeLisio appeals through counsel that part of a December 31, 2008, Board of Veterans' Appeals (Board) decision that denied entitlement to (1) an effective date prior to June 5, 2005, for benefits for diabetes mellitus type 2 (diabetes) and peripheral neuropathy of the left-lower extremity (peripheral neuropathy),[1] and (2) a disability rating in excess of 20% for the period from April 18, 1983, to November 17, 1988, and in excess of 60% for the period since November 18, 1988, for a service-connected low-back disability. The Court referred this appeal to a panel and held oral argument to resolve the novel issue of whether a disability that is secondarily service-connected can have an effective date earlier than the date a claim was filed explicitly for the primary service-connected disability. We find that, under certain, limited circumstances, it can. Thus, for the reasons that follow, that part

---

[1] "Neuropathy" is defined as "a functional disturbance or pathological change in the peripheral nervous system . . . . Known etiologies include complications of other diseases (such as diabetes or porphyria)." Dorland's Illustrated Medical Dictionary 1287 (31st ed. 2007) [hereinafter Dorland's]. "Peripheral neuropathy" is defined as the "neuropathy of several peripheral nerves simultaneously." *Id.* at 1288, 1513.

of the Board decision on appeal will be in part affirmed, and in part set aside and the matters remanded for further adjudication consistent with this decision.

## I. FACTS

### A. Peripheral Neuropathy and Diabetes

Mr. DeLisio served on active duty in the U.S. Army from June 1966 to June 1969, including service in Vietnam. On October 24, 1980, Mr. DeLisio filed a "claim for agent orange" that noted symptoms of skin problems, stress, and swollen lymph nodes. Record (R.) at 3579. On October 31, 1980, he filed "a supplemental claim . . . for agent orange condition" and listed symptoms of "numbness in [his] left leg," large lymph nodes, erratic heartbeat, a breathing condition, and hair loss. R. at 132-33. The record of proceedings reflects that, in February 1981, the Pittsburgh, Pennsylvania, VA regional office (RO) acknowledged receipt of the supplemental claim and informed Mr. DeLisio that it would process the request for benefits once the claims file was returned from the Board on another matter. It is undisputed, however, that these claims had not been adjudicated by June 1992, when Mr. DeLisio submitted a letter to the RO requesting adjudication of his "claim for Agent Orange Exposure." R. at 3764.

In September 1992, Mr. DeLisio, who was then self-represented, was present for a hearing before the Board. The Board member and Mr. DeLisio discussed Mr. DeLisio's pending claims at an off-the-record pre-hearing conference. Following the conference and once on the record, the Board member listed 15 matters that required adjudication. Notably, however, the Board member omitted any mention of matters raised solely in the October 31, 1980, claim for benefits (left-leg numbness, erratic heartbeat, a breathing condition, and hair loss). R. at 3692. The Board member then asked Mr. DeLisio if the matters were correct, and Mr. DeLisio responded, "I think so[,] sir." *Id.*

In March 1995, the Board adjudicated the matters listed by the Board member at the hearing and, inter alia, denied "service connection for a skin disorder claimed as a residual to exposure to herbicides in Vietnam (or Agent Orange)." R. at 2397. Mr. DeLisio appealed that decision to the Court, and, in April 1996, the Court granted the parties' joint motion for remand

(JMR), which (1) remanded the matters of post-traumatic stress disorder (PTSD) and low-back disability and (2) dismissed the remaining matters on appeal.

Independent of the Board's processing of the above matters, in September 1993, Mr. DeLisio was diagnosed with "right and left lower extremity peripheral neuropathy secondary to perked diskogenic disease of the lumbosacral area" following complaints of decreased sensation in his legs. R. at 3078. In January 1994, Mr. DeLisio filed a claim for benefits for peripheral neuropathy.[2] It is undisputed that this claim was not adjudicated when, on June 5, 2006, Mr. DeLisio filed a claim for benefits for diabetes and peripheral neuropathy. At the time of his 2006 filing, Mr. DeLisio had received a diagnosis of diabetes. He also had diagnoses of peripheral neuropathy, diabetic neuropathy and diabetic polyneuropathy in response to his complaints of tingling, numbness, and decreased sensation of the left-lower extremity.[3]

Key to Mr. DeLisio's claims, on May 8, 2001, diabetes mellitus was added to the list of herbicide diseases presumptively associated with exposure to Agent Orange in Vietnam. *See Disease Associated with Exposure to Certain Herbicide Agents: Type 2 Diabetes*, 66 Fed. Reg. 23,166 (May 8, 2001); *see also* 38 C.F.R. §§ 3.307(a)(6)(iii), 3.309(a) (2011). Henceforth, Mr. DeLisio was a "*Nehmer* class member"[4] and potentially entitled to an effective date for benefits for diabetes earlier than the date presumptive service connection for diabetes was authorized. *See* 38 C.F.R. § 3.816(c)(2) (2011) ("If the class member's claim for disability compensation for the covered herbicide disease was either pending before VA on May 3, 1989, or was received by VA between that date and the effective date of the statute or regulation establishing a presumption of service connection for the covered disease, the effective date of the award will be

---

[2] Although this document is not in the record of proceedings, the Board decision on appeal noted that Mr. DeLisio "submitted a detailed statement in January 1994" in which he stated "that he had a new diagnosis of peripheral neuropathy that was consistent with Agent Orange." R. at 22.

[3] "Polyneuropathy" is another name for "peripheral neuropathy." DORLAND'S at 1288.

[4] A *Nehmer* class member is "[a] Vietnam veteran who has a covered herbicide disease," i.e., "a disease for which the Secretary of Veterans Affairs has established a presumption of service connection before October 1, 2002 pursuant to the Agent Orange Act of 1991, Public Law 102-4, other than chloracne." 38 C.F.R. § 3.816(b) (2011); *see also Nehmer v. U.S. Veterans Admin.*, 118 F.R.D. 113 (N.D. Cal. 1987) (finding that service members who have an existing claim for benefits pending – or become eligible to apply for benefits – based on exposure to herbicides are members of the *Nehmer* class).

3

the later of the date such claim was received by VA or the date disability arose . . . ."); *see also* 38 C.F.R. § 3.816(c)(1) ("If VA denied compensation for the same covered herbicide disease in a decision issued between September 25, 1985 and May 3, 1989, the effective date of the award will be the later of the date VA received the claim on which the prior denial was based or the disability arose . . . .").[5]

In May 2007, the RO found that Mr. DeLisio's diabetes was service connected on a presumptive basis and assigned a 20% disability rating, effective June 5, 2006, the date of Mr. Delisio's claim for benefits explicitly for diabetes. The same rating decision found that Mr. DeLisio's peripheral neuropathy was service connected secondary to diabetes and assigned a 10% disability rating, effective June 5, 2006.

In the December 2008 decision on appeal, the Board agreed with the RO that Mr. DeLisio, as a *Nehmer* class member, was entitled to presumptive service connection for diabetes. The Board also agreed that Mr. DeLisio first filed a claim for diabetes on June 5, 2006, but found that he was entitled to an effective date of June 5, 2005, one year earlier than the date of his claim for benefits specifically for diabetes. *See* 38 U.S.C. § 5110(g); 38 C.F.R. § 3.114(a)(3) (2011) (if claim for benefits is submitted more than one year after effective date of liberalizing law or issue, benefits may be authorized one year earlier than date of claim). The Board additionally found that Mr. DeLisio's diabetes was diagnosed first in 2000, but dismissed the notion that his October 31, 1980, claim for benefits included a claim for diabetes because "[t]he veteran could not claim a disorder that was not diagnosed. Nor did he." R. at 21.

Regarding peripheral neuropathy, the Board acknowledged that Mr. DeLisio's January 1994 claim for benefits for peripheral neuropathy was not adjudicated until the underlying May 2007 RO decision. However, the Board found that the evidence did not support a peripheral neuropathy diagnosis until 2001, and that the medical evidence thereafter mentioned peripheral neuropathy only as a result of diabetes, and determined that Mr. DeLisio was not entitled to service connection for peripheral neuropathy on any basis other than as secondary to diabetes.

---

[5] *See generally Nehmer v. U.S. Veterans Admin.*, 712 F. Supp. 1404 (N.D. Cal. 1989) (voiding all previous benefit denials for certain disabilities based on exposure to herbicides); *Nehmer v. U.S. Veterans Admin.*, 32 F. Supp. 2d 1175 (N.D. Cal. 1999) (clarifying its 1989 decision), *aff'd,* 284 F.3d 1158 (9th Cir. 2002).

Accordingly, the Board found service connection for peripheral neuropathy as secondary to diabetes, and found that Mr. DeLisio's entitlement to benefits for peripheral neuropathy was tied to his claim for benefits for diabetes. The Board assigned June 5, 2005, as the effective date for benefits for peripheral neuropathy, the same date as that assigned for benefits for diabetes.

B. Low-Back Disability

Mr. DeLisio first filed a claim for service connection for a low-back disability in June 1981. His claim was denied in November 1981 and became final.[6] On April 18, 1983, Mr. DeLisio attempted to reopen his claim with new medical evidence regarding his low-back disability. After further development, a July 1993 Board remand, and an April 1996 Court order granting a JMR, a February 1998 Board decision granted service connection for a low-back disability, as secondary to Mr. DeLisio's service-connected right-leg condition.[7] In May 1998, the RO assigned a 10% disability rating, effective April 18, 1983. Mr. DeLisio appealed both the disability rating and the assigned effective date, and a March 2000 Board decision subsequently denied an earlier effective date and remanded the matter of the appropriateness of the 10% disability rating for further adjudication. Mr. DeLisio initially appealed the Board's effective-date finding, but expressly withdrew his appeal of the effective date pursuant to a JMR that was granted by the Court in January 2001.

Following three additional Board remands, the Board decision on appeal found that (1) an earlier effective date for Mr. DeLisio's low-back disability was unwarranted, based upon Mr. DeLisio's express withdrawal of his appeal in the JMR granted by the Court in January 2001 and his nonspecific assertions of clear and unmistakable error (CUE) in the March 2000 Board decision, (2) a 20% disability rating–rather than 10%–was warranted for his low-back disability from April 18, 1983, to November 18, 1988, and (3) a 60% disability rating–rather than 10%–was warranted for his low-back disability from November 18, 1988. This appeal followed.

---

[6] A subsequent Board decision found no clear and unmistakable error (CUE) in this denial.

[7] This right-leg condition consists of a residual right knee injury, rated at 10% from September 1982 and a right peroneal nerve injury, rated at 30% from May 1990. It is unrelated to the left-leg numbness and peripheral neuropathy discussed in the preceding section.

## II.  PARTIES' ARGUMENTS

On appeal, Mr. DeLisio argues that the Board erred by limiting the effective date for benefits of peripheral neuropathy to the date of his claim for benefits explicitly for diabetes.  He contends that his October 31, 1980, claim for benefits for a condition related to Agent Orange exposure, which noted the symptom of left-leg numbness, reasonably encompassed a claim for benefits for both peripheral neuropathy (as the cause of his left-leg numbness) and diabetes (as the cause of his peripheral neuropathy and left-leg numbness).  He further argues that this claim remained unadjudicated until the underlying May 2007 RO decision, such that an October 31, 1980, effective date is warranted.  In the alternative, he argues that a January 1994 effective date is warranted because his January 1994 claim for benefits for peripheral neuropathy reasonably encompassed a claim for benefits for diabetes (as the cause of his peripheral neuropathy).

Mr. DeLisio also argues that the Board erred by (1) finding that his peripheral neuropathy was related to service only as secondary to diabetes, (2) discounting previous peripheral neuropathy diagnoses, (3) violating due process in failing to adjudicate matters raised in the October 31, 1980, request for benefits, and (4) failing to award higher disability ratings and an earlier effective date for his low-back disability.

The Secretary disputes Mr. DeLisio's contentions and seeks affirmance of the Board decision.  First, the Secretary argues that the effective date for benefits for diabetes can be no earlier than one year prior to June 5, 2006, the date that Mr. DeLisio filed a claim for benefits explicitly for that disease.  Second, he contends that the effective date for benefits for peripheral neuropathy can also be no earlier than one year prior to June 5, 2006, because Mr. DeLisio could not have been entitled to benefits for a disability secondary to diabetes until he was entitled to benefits for diabetes.  Third, the Secretary argues that Mr. Delisio's October 31, 1980, claim for benefits for left-leg numbness (1) did not encompass a claim for benefits for either peripheral neuropathy or diabetes, (2) was adjudicated in the March 1995 Board decision and became final with the April 1996 Court order dismissing all matters on appeal except the claim for benefits for PTSD and a low-back disorder, or (3) was withdrawn in a September 1992 pre-hearing conference.

The Secretary further argues that the Board did not (1) err with regard to its finding that Mr. DeLisio's peripheral neuropathy was not service connected on a direct basis, (2) improperly discount prior peripheral neuropathy diagnoses, (3) violate due process with regard to Mr. DeLisio's October 31, 1980, claim for benefits for several disabilities, or (4) err as to its assignment of an effective date and disability ratings for Mr. DeLisio's low-back disability.

## III. DISCUSSION

As discussed below, the record and the law generally support Mr. DeLisio's arguments with regard to the effective date for benefits for peripheral neuropathy and diabetes, and these matters will be remanded for further adjudication. The record also reflects that the Board provided an inadequate statement of reasons or bases for finding a disability rating higher than 60% unwarranted for Mr. DeLisio's low-back disability from November 18, 1988, and this matter will be remanded for further adjudication. However, the record does not support Mr. DeLisio's assertion of Board error with regard to the effective date of benefits for his low-back disability or the 20% disability rating from April 18, 1983, to November 18, 1988. Additionally, Mr. DeLisio's argument regarding a due process violation is rendered moot to the extent that it relates to his October 31, 1980, claim for benefits for left-leg numbness, and is beyond our jurisdiction to the extent that it relates to the claim for benefits for other disabilities included in the October 31, 1980, claim.

### A. Effective Dates for Benefits for a Disability

The determination of an effective date for benefits for a disability can be a complex matter. First, an effective date generally can be no earlier than the date of the claim. *See* 38 U.S.C. § 5110(a) ("[T]he effective date of an award . . . shall not be earlier than the date of receipt of application therefor."). However, certain statutory provisions permit an effective date up to one year earlier than the date of the claim. For example, if a claimant filed a claim for benefits for a disability within one year of his separation from service, the effective date for the award of benefits can be as early as the date of separation from service. 38 U.S.C. § 5110(b)(1). Similarly, an effective date can be up to one year earlier than the date of a claim if an award is made pursuant to a change in law. 38 U.S.C. § 5110(g); *see also, e.g.*, 38 U.S.C. §§ 5110(d)

7

(effective date tied to date of death if claim filed within one year of death), 5110(j) (effective date tied to date of report of death of active duty service member if claim filed within one year of report).

Second, an effective date generally can be no earlier than the "facts found." 38 U.S.C. § 5110(a) ("[T]he effective date of an award . . . shall be fixed in accordance with the facts found . . . ."). These "facts found" include the date the disability first manifested and the date entitlement to benefits was authorized by law and regulation. *See* 38 C.F.R. § 3.400 (2011) (the effective date "will be the date of receipt of the claim or the date entitlement arose, whichever is the later"); *see also Ellington v. Peake*, 541 F.3d 1364, 1369-70 (Fed. Cir. 2008) (finding the effective date provisions of 38 C.F.R. § 3.400 "consistent with 38 U.S.C. § 5110"); *Livesay v. Principi*, 15 Vet.App. 165, 171 (2001) (en banc) (rejecting argument that 38 C.F.R. § 3.400(q) (stating that the effective date for reopened claim is the "date of receipt of the new claim or [the] date entitlement arose, whichever is later") is inconsistent with 38 U.S.C. § 5110(a)).[8] For instance, if a claimant filed a claim for benefits for a disability before he actually had the disability, the effective date for benefits can be no earlier than the date the disability first manifested. *See McGrath v. Gober*, 14 Vet.App. 28, 35 (2000) (remanding case for Board to determine when disability "manifested itself under . . . all of the 'facts found'" and to assign an effective date for benefits accordingly); *see also Ellington*, 541 F.3d at 1369 (finding it "illogical" to award benefits on a certain date "when the evidence indicates that those conditions did not develop until some later date"); *cf. Ross v. Peake*, 21 Vet.App. 528, 533 (2008) ("[W]hen that additional disability was acquired or became manifest, if later than the date of application, necessarily would control the effective date for an award."). Additionally, if a disability is found to be service connected based on the issuance of a new act or administrative issue, the effective date typically can be no earlier than the effective date of the act or administrative issue. *See*

---

[8] Our concurring colleague asserts that 38 C.F.R. § 3.400 is inconsistent with the effective-date provisions of 38 U.S.C. § 5110 because the regulation circumscribes the effective date of benefits to the date of the claim or the date entitlement arose, whichever is later, while the statute circumscribes the effective date to the date of the claim or in accordance with the facts found, whichever is later. We do not perceive the conflict our colleague sees, and his view ignores the fact that both this Court and the U.S. Court of Appeals for the Federal Circuit have held that § 3.400 is consistent with section 5110. *See Ellington* and *Livesay*, both *supra*.

8

38 U.S.C. § 5110(g) (effective date "shall not be earlier than the effective date of the act or administrative issue" authorizing benefits); *DeSousa v. Gober*, 10 Vet.App. 461, 467 (1997) (finding that section 5110(g) "precludes an effective date earlier than the effective date of the liberalizing law or regulation" authorizing benefits); *McCay v. Brown*, 9 Vet.App. 183, 187 (1996) (same), *aff'd*, 106 F.3d 1577 (Fed. Cir. 1997). However, an exception to the general rule applies for *Nehmer* class members, who may be assigned effective dates earlier than the date of the law or regulation establishing presumptive service connection. *See* 38 C.F.R. § 3.816(c)(2) (2011) (allowing for effective date for benefits for covered herbicide diseases of *Nehmer* class members as early as the date of the claim, even if presumption of service connection was not established at that time).

Accordingly, in determining the effective dates for the award of Mr. DeLisio's benefits for diabetes and peripheral neuropathy, we must consider (1) the date of his claims for benefits for both disabilities, (2) the facts found as to his disabilities, including the date these disabilities first manifested and the date entitlement to benefits was authorized by law or regulation, and (3) Mr. DeLisio's status as a *Nehmer* class member.

## B. Mr. DeLisio's Claim for Benefits for Diabetes

There is no dispute that Mr. DeLisio filed a claim for benefits explicitly for diabetes on June 5, 2006. However, Mr. DeLisio argues that his January 1994 claim for benefits for peripheral neuropathy and his October 31, 1980, claim for benefits based on exposure to Agent Orange, which noted a symptom of left-leg numbness, reasonably encompassed a claim for benefits for diabetes. In support of his argument, he asserts that his left-leg numbness and peripheral neuropathy were both eventually diagnosed as caused by diabetes. The Secretary argues that neither the 1994 nor the October 31, 1980, claim for benefits reasonably encompassed a claim for benefits for diabetes. In order to resolve this dispute, we look first to our caselaw regarding the scope of claims.

### *1. Scope of Claim*

#### a. Generally

A claim for VA benefits requires "(1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing." *Brokowski v. Shinseki*, 23 Vet.App.

9

79, 84 (2009). However, a claimant is not required in filing a claim for benefits to identify a precise medical diagnosis or the medical cause of his condition; rather, he sufficiently files a claim for benefits "by referring to a body part or system that is disabled or by describing symptoms of the disability." *Id.* at 86. This is because a claimant is not expected to have medical expertise and generally "is only competent to identify and explain the symptoms that he observes and experiences." *Clemons v. Shinseki*, 23 Vet.App. 1, 5 (2009); *see also Jandreau v. Nicholson*, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence of laypersons to testify as to symptoms but not medical diagnosis).

Moreover, even if a claimant attempts to identify his diagnosis in his claim for benefits, his claim is not limited necessarily to benefits for that diagnosis. *See Clemons*, 23 Vet.App. at 5 ("[A] self-represented layperson . . . ha[s] neither the legal or medical knowledge to narrow the universe of his claim . . . . [He does] not file a claim to receive benefits only for a particular diagnosis, but for the affliction his . . . condition, whatever that is, causes him."). Also, even if a claimant believes that his condition is related to service in a particular way, his claim is not limited solely to one theory of service connection. *See Kent v. Nicholson*, 20 Vet.App. 1, 16 (2006) (a claim "includes all theories under which service connection may be granted").

Of course, the Secretary is not required to raise and investigate "all possible" theories of service connection for a claim. *Robinson v. Peake*, 21 Vet.App. 545, 553 (2008) (noting that the duty to assist is triggered when "some evidence . . . 'indicates' that the disability 'may be associated' with . . . service" (quoting 38 U.S.C. § 5103A(d)(2)(B))), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009); *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992) ("[T]he duty to assist is not a license for a 'fishing expedition' to determine if there might be some unspecified information which could possibly support a claim."). But, upon the filing of a claim for benefits, the Secretary generally must investigate the reasonably apparent and potential causes of the veteran's condition and theories of service connection that are reasonably raised by the record or raised by a sympathetic reading of the claimant's filing. *See Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000); *Robinson*, 21 Vet.App. at 552 (characterizing *Schroeder* as holding that "the duty to assist applies to the entire claim, which might require assistance in developing more than one theory in support of that claim"); *see also Roberson v. Principi*, 251

F.3d 1378, 1384 (Fed. Cir. 2001); *Brokowski*, 23 Vet.App. at 85.  Overall, the scope of the claim will be based on a sympathetic assessment of  "the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim," i.e., the information gathered upon investigation.  *Clemons*, 23 Vet.App. at 5.

b. Underlying Causal Disabilities Leading to Secondary Service Connection

Moreover, pursuant to 38 C.F.R. § 3.310 (allowing for secondary service connection of a "disability which is proximately due to or the result of a service-connected disease or injury"), the relationship between a claimant's condition and service may be established through a causal chain of diseases or disabilities.  Thus, if the condition for which VA benefits are sought is not directly associated with service, but information obtained during the processing of the claim reasonably indicates that the cause of the condition is a disease or other disability that may be associated with service, the Secretary generally must investigate whether the causal disease or disability is related to service, in order to determine whether the claimed condition is related secondarily to service.  *See Schroeder*, *supra*; *Roper v. Nicholson*, 20 Vet.App. 173, 179 (2006) (acknowledging that "service connection may be established on a secondary basis"); *McLendon v. Nicholson*, 20 Vet.App. 79, 83 (2006) (noting that the duty to assist is triggered when "evidence 'indicates' that a disability . . . 'may be associated' with . . . service" (quoting 38 U.S.C. § 5103A(d)(2)(B))).  If the Secretary determines that the causal disease or disability is, in fact, connected to service, then the claim for benefits for the condition "reasonably encompasses" a claim for that causal disease or disability, such that no additional filing is necessary to initiate a claim for benefits for the causal disease or disability.[9]  *Clemons*, 23 Vet.App. at 5 (holding that a claim for benefits "may reasonably be encompassed by several factors, including . . . information . . . that the Secretary obtains in support of the claim"); *cf. id.* at 5-6 (finding that claim for

---

[9]  In this case, of course, Mr. DeLisio filed formal claims for benefits for left-leg numbness in 1980, peripheral neuropathy in 1994, and diabetes in 2006, and the need to file a formal claim for benefits for any of these disabilities is not at issue.  Rather, the issue is whether Mr. DeLisio may be assigned an effective date for benefits for diabetes earlier than his formal 2006 diabetes claim because a claim for diabetes reasonably was encompassed in his claim for benefits for peripheral neuropathy in 1994 (or even in his claim for benefits for left-leg numbness in 1980), or whether Mr. DeLisio may be assigned an effective date for benefits for peripheral neuropathy earlier than his formal 1994 peripheral neuropathy claim because a claim for peripheral neuropathy reasonably was encompassed in his claim for benefits for left-leg numbness in 1980.

11

benefits reasonably encompassed the disabilities diagnosed as the cause of claimant's mental condition, even though claimant classified his request as a claim for benefits for PTSD); *Rice v. Shinseki*, 22 Vet.App. 447, 453-54 (2009) (holding that the issue of the appropriateness of a total disability rating based on individual unemployability (TDIU) is inferred as part of a claim whenever evidence of unemployability is submitted with a claim for benefits). This is because, as noted above, the law does not expect the claimant to have the medical or legal expertise to file a claim requesting benefits for each technical disability in the causal chain of disabilities that composes his condition, and a claim must be read sympathetically. *Clemons*, 23 Vet.App. at 5.

Otherwise stated, if (1) a claimant files a claim for benefits for a condition (here, an October 31, 1980, claim for benefits for left-leg numbness or a January 1994 claim for benefits for peripheral neuropathy), (2) the claim remains open and not finally adjudicated, and (3) the cause of that condition ultimately is determined to be a disease or disability incurred in or aggravated by service (here, diabetes), then the effective date for both the secondarily service-connected condition and the service-connected causal disease or disability can be as early as the date of the open claim, depending on when each disability manifested and when law or regulation otherwise authorized benefits. *See* 38 U.S.C. § 5110(a) ("[T]he effective date of an award . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor").

The Board decision on appeal generally, and the Secretary at oral argument specifically, endorsed the notion that a claimant must file a claim explicitly for benefits for the causal disease or disability to establish entitlement to secondary service connection for the claimed condition. Such an argument, however, is overly technical and generally incompatible with the "veteran-friendly," nonadversarial, administrative claims system. *Kouvaris v. Shinseki*, 22 Vet.App. 377, 381 (2009). Moreover, this position has no support in statute or regulation, and contravenes the crux of the previously discussed caselaw, namely that (1) a claimant need not file a claim for benefits for the precise medical causes of his condition, (2) the Secretary must sympathetically read a claimant's filing and investigate potentially applicable theories of service connection, and (3) a claim for benefits for one disability reasonably may encompass other disabilities. *See*

12

*Brokowski*, 23 Vet.App. at 85-86; *Clemons*, 23 Vet.App. at 5; *see also Schroeder* and *Kent*, both *supra*.

It is important to note that we do not hold that a claim for benefits reasonably encompasses a claim for unclaimed disabilities that are not a cause of the condition for which benefits are sought, or for unclaimed disabilities that arise as a result of the condition for which benefits are sought. *See Brokowski*, 23 Vet.App. at 86-87 (finding that a claim for benefits for depression and anxiety did not reasonably encompass a claim for benefits for peripheral neuropathy where (1) the claim for benefits for depression and anxiety contained no reference to peripheral neuropathy or related symptoms, and (2) medical records "provided no information that . . . the nature of his disability involved peripheral neuropathy"); *cf. Ellington*, 541 F.3d at 1369 (finding that, where a claimant originally filed a claim for benefits for leukemia and later developed diabetes and hypertension as a result, the effective date for benefits for diabetes and hypertension need not be identical to the effective date for benefits for leukemia). Rather, we hold that, when a claim is *pending* and information obtained reasonably indicates that the claimed condition is *caused* by a disease or other disability that may be associated with service, the Secretary generally must investigate the possibility of secondary service connection; and, if that causal disease or disability is, in fact, related to service, the pending claim reasonably encompasses a claim for benefits for the causal disease or disability, such that no separate filing is necessary to initiate a claim for benefits for the causal disease or disability, and such that the effective date of benefits for the causal disability can be as early as the date of the pending claim.[10]

c. Scope of Mr. DeLisio's January 1994 Claim for Benefits for Peripheral Neuropathy

Mr. DeLisio argues that his January 1994 claim for benefits for peripheral neuropathy reasonably encompassed a claim for benefits for diabetes. The record and the law support his argument. As discussed above, because Mr. DeLisio's January 1994 claim for benefits for

---

[10] Although our concurring colleague states that this analysis is unnecessarily complex and difficult, we note that striking down § 3.400 would ignore binding caselaw. *See Ellington*, 541 F.3d at 1369-70 (finding the effective date provisions of 38 C.F.R. § 3.400 "consistent with 38 U.S.C. § 5110"); *Livesay*, *supra* (rejecting argument that 38 C.F.R. § 3.400(q) (which circumscribes effective date of reopened claim to "date entitlement arose") is inconsistent with 38 U.S.C. § 5110(a)); *see also supra* n.7.

13

peripheral neuropathy remained open when the medical evidence determined that Mr. DeLisio's peripheral neuropathy was caused by diabetes and the Secretary found diabetes connected to service, the January 1994 claim reasonably encompassed a claim for benefits for diabetes. *See* section III.B.1.b, *supra*; R. at 23 (Board noting that Mr. DeLisio's "claim of January 1994 was not adjudicated until . . . [the underlying RO decision] in May 2007"); R. at 19-20 (Board noting the medical evidence from 2000 to 2007 tying peripheral neuropathy to diabetes). Therefore, the Board's finding that the effective date of a claim for benefits for diabetes could be no earlier than June 5, 2006, is clearly erroneous. *See Lalonde v. West*, 12 Vet.App. 377, 380 (1999) ("The Board's factual findings regarding the date a formal or informal claim was filed . . . are reviewed by this Court under the 'clearly erroneous' standard."); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).

### d. Scope of Mr. DeLisio's October 31, 1980, Claim for Benefits
### for Agent-Orange-Related Conditions

Mr. DeLisio further argues that the proper effective date for the award of benefits is October 31, 1980, because his October 31, 1980, claim for benefits for conditions related to Agent Orange, which noted a symptom of left-leg numbness, reasonably included a claim for benefits for peripheral neuropathy (which he claims is the source of his numbness) and diabetes (as the underlying cause of his peripheral neuropathy). The Board found that the October 31, 1980, claim for benefits did not and could not include a claim for benefits for diabetes because "[t]he veteran could not claim a disorder that was not diagnosed." R. at 21. However, the Board misstated the law. *See Brokowski*, 23 Vet.App. at 90 ("[A] medical diagnosis is not necessary to initiate a claim."); *see also Jandreau*, 492 F.3d at 1377 (holding that a medical diagnosis is not required to substantiate a claim in certain circumstances). Specifically, entitlement to benefits for a disability or disease does not arise with a medical diagnosis of the condition, but with the manifestation of the condition and the filing of a claim for benefits for the condition. 38 U.S.C. § 5110(a); *see McGrath*, *supra*. In concert with the law, if (1) Mr. DeLisio's October 31, 1980, request for benefits remained pending, and (2) it was determined that Mr. DeLisio's left-leg numbness was caused by his presumptively service-connected diabetes during that pendency,

then his October 31, 1980, claim for benefits for left-leg numbness reasonably would encompass a claim for benefits for diabetes. *See* section III.B.1.b, *supra*.

The Secretary argues that the October 31, 1980, claim is not pending because it was either adjudicated in the March 1995 Board decision and became final with the April 1996 Court order dismissing all matters on appeal except the claim for benefits for PTSD and a low-back disorder, or was withdrawn in a September 1992 pre-hearing conference. Accordingly, we review the Secretary's arguments.

### *i. Implicit Adjudication in March 1995 Board Decision*

Although an April 1996 Court order dismissed Mr. DeLisio's appeal of the March 1995 Board decision as to all matters except PTSD and a low-back disability, the record reflects that the March 1995 Board decision neither explicitly nor implicitly adjudicated Mr. DeLisio's October 31, 1980, claim for benefits for a disability manifested by left-leg numbness. Specifically, the March 1995 Board decision–which included adjudication of Mr. DeLisio's claim for benefits for a skin disorder or chloracne due to Agent Orange–did not mention left-leg numbness or otherwise reasonably inform Mr. DeLisio that all of his claims for benefits for Agent-Orange-related disabilities had been adjudicated. *See Ingram v. Nicholson*, 21 Vet.App. 232, 243 (2007) ("[A] reasonably raised claim remains pending until there is . . . recognition of the substance of the claim in an RO [or Board] decision from which a claimant could deduce that the claim was adjudicated . . . ."). A reasonable claimant would not have deduced that the matter of left-leg numbness was implicitly adjudicated with the matter of a skin disorder because (1) a skin disorder is seemingly unrelated to left-leg numbness, (2) the Board decision in no way alluded to any Agent Orange conditions beyond a skin disorder, and (3) the skin disorder matter was raised in an October 24, 1980, claim for benefits, not the October 31, 1980, claim that raised left-leg numbness. *See Cogburn v. Shinseki*, 24 Vet.App. 205 (2010) (noting factors for applying the implicit denial rule, including "the relatedness of the claims," whether the "adjudication allude[d] to the pending claim in such a way that it could reasonably be inferred that the prior claim was denied," the "timing of the claims," and "whether the claimant is represented"); *Ingram*, *supra*; *see also Adams v. Shinseki*, 568 F.3d 956, 963-64 (Fed. Cir. 2009) (considering the language of the decisions, the relatedness of the claims, and the timing of the

claims in deciding whether claim was implicitly denied). Thus, because the March 1995 Board decision did not implicitly or explicitly adjudicate entitlement to benefits for left-leg numbness, this matter was not encompassed in the April 1996 Court order and remained unadjudicated. *See Ledford v. West*, 136 F.3d 776, 780 (Fed. Cir. 1998) (holding that the Court lacks jurisdiction over claims not appealed to and unaddressed by the Board).

### ii. Withdrawal of Claims in September 1992 Pre-Hearing Conference

Although there is no regulation specifically governing the withdrawal of a claim that has not yet been decided by the RO, *cf.* 38 C.F.R. § 20.204 (2011) ("Withdrawal of *Appeal*" (emphasis added)), it is well settled that withdrawal of a claim is only effective where the withdrawal is explicit, unambiguous, and done with a full understanding of the consequences of such action on the part of the claimant. *See Hanson v. Brown*, 9 Vet.App. 29, 32 (1996) (affirming Board finding that claimant withdrew a claim for benefits for a particular disability where withdrawal, which was based chiefly upon a written document (a report of contact that was contemporaneously prepared by a VA social worker assigned to evaluate the appellant's post-traumatic stress disorder), was explicit and there was no indication of any misunderstanding of the consequences); *see also Kalman v. Principi*, 18 Vet.App. 522, 524 (2004) (reversing Board finding that claimant withdrew his appeal where his statement regarding the "only issue remaining," in context, referred to resolving the location of a video hearing and not limiting the issues on appeal); *Verdon v. Brown*, 8 Vet.App. 529, 533 (1996) (setting aside Board finding that claimant withdrew his appeal where (1) the claimant's letter to his service representative stated he had "come to an agreement" with the disability rating for his right leg, and (2) the service representative's presentation to the Board omitted mention of the right-leg rating, but (3) the presentation of the claimant's other service representative mentioned the right-leg rating); *Isenbart v. Brown*, 7 Vet.App. 537, 541 (1995) (finding that, where claimant enumerated certain issues and stated that there are "no additional issues" at hearing, Court found that "these few words spoken orally" did not provide "the formality or specificity that withdrawal of [a Notice of Disagreement] requires").

Here, the hearing transcript reflects that the September 1992 Board member listed 15 matters that required adjudication and then asked Mr. DeLisio if he "got the issues straight," to

which Mr. DeLisio responded that he "thought" so. R. at 3692. However, although the Board member mentioned matters raised in Mr. DeLisio's October 24, 1980, claim for benefits, the Board member omitted mention of any matters raised solely in Mr. DeLisio's October 31, 1980, claim for benefits (left-leg numbness, erratic heartbeat, a breathing condition, and hair loss).[11] Although Mr. DeLisio "thought" that the Board member had identified the issues to be discussed, the transcript reflects neither an explicit discussion of withdrawal nor any indication that Mr. DeLisio understood that he might be withdrawing claims for benefits for any disabilities not discussed. R. at 3692. Accordingly, Mr. DeLisio's thoughts regarding the issues to be discussed did not constitute a withdrawal of his October 31, 1980, claim for benefits for left-leg numbness.

Because Mr. DeLisio's October 31, 1980, claim for benefits for left-leg numbness was not withdrawn at the September 1992 pre-conference hearing or finally adjudicated in the March 1995 Board decision and subsequent April 1996 Court order, it remained open when the December 2008 Board decision on appeal was rendered. Moreover, because the claim remains open, the full scope of that claim has not yet been determined. Specifically, the cause of Mr. DeLisio's left-leg numbness condition has not yet been established.

*2. Facts Found Regarding Mr. DeLisio's Diabetes*

Regardless of the date of a claim, an effective date generally can be no earlier than the facts found, i.e., the date that a claimant's disability first manifested and the date benefits were authorized. *See* 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400.

a. January 1994 Claim

Because Mr. DeLisio is a *Nehmer* class member and his 1994 claim (and possibly his October 31, 1980, claim) encompassed a claim for diabetes, the effective date is not limited to

---

[11] The Court notes that the Board member mentioned the issue of lymph nodes, which was raised in both the October 24, 1980, and October 31, 1980, claims for benefits. Given the lack of mention of the other asserted disabilities raised only in the October 31, 1980, claim, it appears that the reference to lymph nodes as a claimed disability arises from the October 24, 1980, claim.

the date diabetes was added to the list of presumptively service-connected diseases for veterans who were exposed to Agent Orange.[12] *See* text accompanying n.5, *supra*.

Although the Board noted that Mr. DeLisio was not diagnosed with diabetes until 2000, an effective date should not be assigned mechanically based on the date of a diagnosis. Rather, all of the facts should be examined to determine the date that Mr. DeLisio's diabetes first manifested. *See* 38 U.S.C. § 5110 ("[T]he effective date of an award . . . shall be fixed in accordance with the facts found . . . . "); *Ross* and *McGrath*, both *supra*; *Quarles v. Derwinski*, 3 Vet.App. 129, 135-36 (1992) (finding entitlement to an earlier effective date than the date of diagnosis based on evidence of symptoms at an earlier date). This would include further development as necessary and an assessment of the symptoms Mr. DeLisio suffered prior to the 2000 diagnosis of diabetes and whether such symptoms were attributable to diabetes. *See* 38 U.S.C. § 5103A (establishing Secretary's duty to assist); *Vigil v. Peake*, 22 Vet.App. 63, 66 (2008) (noting need for a retroactive evaluation to assess proper effective date). Inasmuch as this assessment should be made by the Board in the first instance, remand is warranted. *See Tucker v. West*, 11 Vet. App. 369, 374 (1998) (stating that remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate."); *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (holding that the Court is not to conduct de novo fact finding but rather to remand for the Board to find facts in the first instance).

### b. October 31, 1980, Claim

Because Mr. DeLisio's October 31, 1980, claim remains open and he is a *Nehmer* class member, on remand the Board must ensure that his claim is developed properly and adjudicated with regard to, inter alia, whether peripheral neuropathy or diabetes or both are the cause of his claimed left-leg numbness. *See Tucker*, *supra*. If the evidence supports a causal connection, then Mr. DeLisio would be entitled to an effective date of either October 31, 1980, or the date

---

[12] Were Mr. DeLisio *not* a *Nehmer* class member, however, the effective date for the award of benefits for diabetes could be no earlier than May 8, 2001, the effective date of the authorizing act adding diabetes to the list of conditions presumptively caused by exposure to Agent Orange. *See* 38 U.S.C. § 5110(g); 38 C.F.R. § 3.400.

his left-leg numbness first manifested in accordance with the facts found. *See* 38 C.F.R. § 3.816(c)(2).[13]

### C. Mr. DeLisio's Claim for Benefits for Peripheral Neuropathy

The Board assigned June 5, 2005, as the effective date for benefits for peripheral neuropathy, because it tied the effective date for benefits for that condition to Mr. DeLisio's June 5, 2006, claim for benefits explicitly for diabetes and the assigned effective date for the award of benefits for diabetes, which was one year earlier – June 5, 2005. Although the Board correctly noted that the effective date for benefits for Mr. DeLisio's peripheral neuropathy can be no earlier than the effective date for benefits for diabetes because his peripheral neuropathy is secondary to his diabetes, the Board clearly erred, as noted above, in its determination that the earliest effective date for benefits for diabetes was June 5, 2005. *See LaLonde* and *Gilbert*, both *supra*.

Further, because remand is warranted for the Board to determine the proper effective date for benefits for diabetes, remand also is warranted for the Board to determine the proper effective date for benefits for peripheral neuropathy, which can be as early as January 1994 (the date of his claim for benefits explicitly for peripheral neuropathy) or October 31, 1980 (the date of his claim for benefits for left-leg numbness), should it be determined that his left-leg numbness is caused by peripheral neuropathy or diabetes or both. *See Tucker*, *supra*. Additionally, if it is determined that Mr. DeLisio's left-leg numbness was *not* caused by peripheral neuropathy, either on a direct basis or secondary to diabetes, the left-leg numbness matter nevertheless must be developed and adjudicated as to any other reasonably raised, potentially service-connected causes.[14] *See Schroeder*, *supra*; *Robinson*, 21 Vet.App. at 552.

---

[13]  Again, this exception to the general rule regarding effective dates for benefits for conditions added by administrative action is permissible because Mr. DeLisio is a *Nehmer* class member.

[14]  There is evidence in the record indicating that Mr. DeLisio's left-leg numbness may have been caused by peripheral neuropathy, and the peripheral neuropathy may be related to service independent of diabetes. *See* R. at 1185 (1996 medical report stating: "Past medical history is negative for diabetes . . . ."); R. at 2078 (1993 medical report stating: "The diagnosis here is . . . left lower extremity peripheral neuropathy secondary to perked diskogenic disease of the lumbosacral area . . . ."); R. at 2878 (1994 medical report stating: "Bilateral lower extremity symptoms are . . . likely associated with the 'post laminectomy syndrome' . . . ."). Although the Board rejected a finding that Mr. DeLisio's peripheral neuropathy was service connected on any basis other than secondary to diabetes, it did so with regard to the January 1994 claim for benefits and in the context of otherwise improperly limiting its analysis to the period subsequent to the diagnosis of diabetes in 2000. Inasmuch as the October 31, 1980, claim for benefits for

D. Due Process Violation

Mr. DeLisio next argues that matters from his October 31, 1980, claim for benefits remain pending, and that due process has been violated because of the lengthy delay. To the extent that his argument relates to the matter of left-leg numbness, it is rendered moot by the Court's remand of that claim. *See Dunn v. West*, 11 Vet.App. 462, 467 (1998) (holding that remand of a claim under one theory moots the remaining theories advanced on appeal). To the extent that his argument relates to other claims contained in the October 31, 1980, claim, it is beyond our jurisdiction. *See* 38 U.S.C. § 7266 (Court reviews only final decisions of the Board); *Evans v. Shinseki*, 24 Vet.App. 292, 296 (2011) (same).[15]

E. Low-Back Disorder

With regard to his service-connected low-back disorder, Mr. DeLisio contends that he is entitled to (1) an effective date prior to April 18, 1983; (2) a disability rating in excess of 20% for the period from April 18, 1983, to November 17, 1988; and (3) a disability rating in excess of 60% for the period beginning November 18, 1988.

*1. Effective Date Prior to April 18, 1983*

The record does not support Mr. DeLisio's assertion that he is entitled to an effective date prior to April 18, 1983. In a December 29, 2000, joint motion for partial remand, Mr. DeLisio, who was represented by counsel, specifically withdrew his appeal of the issue of an earlier effective date. *See* R. at 1532 ("Appellant withdraws the issue of entitlement to an effective date earlier than April 18, 1983, for the award of service connection for a low back disorder."). As such, the March 28, 2000, Board decision denying an earlier effective date was final as to this issue and can only be attacked through a specific request for revision based on CUE. *See MacKlem v. Shinseki*, 24 Vet.App. 63, 68 (2010) ("A VA decision that has become final generally may not be reversed or amended in the absence of CUE."); *Tyrues v. Shinseki*, 23 Vet.App. 166, 178 (2009) (en banc) (defining a "final decision" as one that "denied relief by

---

left-leg numbness remains unadjudicated, should it be determined that Mr. DeLisio's peripheral neuropathy is the cause of his left-leg numbness, then whether peripheral neuropathy is service connected on any other basis must be fully developed and addressed by the Board.

[15] Mr. DeLisio has not sought a writ of mandamus and does not assert that he has requested that VA process his October 31, 1980, claim and has been denied.

either denying a claim or a specific theory in support of a claim and provided the claimant with notice of appellate rights"), *aff'd*, 631 F.3d 1380 (Fed. Cir. 2011).

With regard to seeking revision of the 2000 Board decision based on CUE, the Board found that Mr. DeLisio presented numerous assertions of CUE in various examination reports and statements in support of his claim, but he never asserted error in any specific final decision, including the 2000 Board decision. The record of proceedings reflects that Mr. DeLisio often used the term "CUE" before the Board but did not provide sufficient specificity as to (1) whether he was actually requesting revision of a final decision, (2) which final decision he alleged contained CUE, and (3) which errors he alleged were clear and unmistakable. *See Andrews v. Principi*, 18 Vet.App. 177, 181 (2004) ("A CUE allegation must identify the alleged error with 'some degree of specificity.'" (quoting *Crippen v. Brown*, 9 Vet.App. 412, 420 (1996))). Overall, Mr. DeLisio fails to demonstrate that (1) he raised a specific allegation of CUE, (2) the Board should have addressed his allegation, *see Acciola v. Peake*, 22 Vet.App. 320, 327 (2008) ("[I]f the pleading could encompass numerous theories [of CUE] . . . a CUE motion is properly dismissed without prejudice."), or (3) the Court should consider his argument for an earlier effective date. *See MacKlem*, 24 Vet.App. at 68 ("This Court reviews CUE claims only when they have been previously adjudicated by the Board."); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that appellant bears burden of demonstrating error on appeal).

*2. 20% Disability Rating from April 18, 1983, to November 17, 1988*

Mr. DeLisio also contends that a 100% disability rating during the period of April 18, 1983, to November 17, 1988, is warranted because he was unemployable and totally disabled during that period. He asserts no specific errors in the Board's adjudication other than the fact that a 100% disability rating was not assigned, and the Court can discern no error from the record of proceedings.

The rating schedule at that time contemplated a maximum 60% schedular disability rating for a low-back disability such as Mr. DeLisio's. *See* 38 C.F.R. § 4.71a, Diagnostic Code 5293 (1988). Although Mr. DeLisio contends that he was unemployed, the Board found that he was employed in law enforcement, security, or investigative positions through 1988, and otherwise found the rating schedule adequate to compensate his level of disability. Based on the

record of proceedings, the Board's findings are plausible and not clearly erroneous. In sum, Mr. Delisio fails to demonstrate clear error in the Board's determination that a 100% disability rating from April 18, 1983, to November 17, 1988, was not warranted. *See Johnston v. Brown*, 10 Vet.App. 80, 84 (1997) (holding that the assignment of disability rating is finding of fact reviewed under the "clearly erroneous" standard); *Gilbert* and *Hilkert*, both *supra*; *see also Thun v. Peake*, 22 Vet.App. 111, 115 (2008) (holding that referral for extraschedular consideration is not warranted if rating schedule is adequate).

### *3. 60% Disability Rating from November 18, 1988*

Mr. DeLisio also contends that he is entitled to a 100% disability rating from November 1988. Although his argument lacks specificity, the Board's statement with regard to a possible extraschedular rating noted that Mr. DeLisio has been unemployed since 1988 and is receiving Social Security disability benefits effective from 1988. The Board further noted that, because Mr. DeLisio had been unemployed since 1988, there was no interference with his work. The latter statement is not further explained, particularly with regard to whether Mr. DeLisio's back problems were the cause of his unemployment. In sum, the Board's statement inadequately addresses possible entitlement to an extraschedular rating or TDIU from November 18, 1988. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"). Accordingly, remand is warranted. *See Tucker*, *supra*.

### F. Remand

On remand, Mr. DeLisio may present, and the Board must consider, any additional evidence and argument in support of the matters remanded. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). These matters are to be provided expeditious treatment on remand in accordance with 38 U.S.C. § 7112.

## IV. CONCLUSION

Upon consideration of the foregoing, that part of the December 31, 2008, Board decision denying an effective date prior to April 18, 1983, and denying entitlement to a disability rating in excess of 20% for the period from April 18, 1983, to November 17, 1988, for a low-back

disability is AFFIRMED. The remainder of that part of the decision on appeal is SET ASIDE and the matters are REMANDED for further adjudication consistent with this opinion.

LANCE, *Judge*, filed an opinion concurring in the result.

LANCE, *Judge*, concurring in the result: Although I agree that the appellant may be entitled to an earlier effective date in this case, I believe that the majority is using an unnecessarily difficult analysis to get there. In my view, we should simply apply 38 U.S.C. § 5110(a) as written. The statute limits the effective date only by "the facts found" and "the date of receipt of the application." The Secretary seeks to add an additional limitation in cases where the claim is granted on a secondary basis. However, the Secretary is not free to add conditions beyond those set forth by Congress. *See Felton v. Brown*, 7 Vet.App. 276, 282 (1994) ("[A] regulation may not amend a statute.").

The Secretary bases his argument on 38 C.F.R. § 3.400 (2011), which limits an effective date by "the date entitlement arose." The majority treats this as an interpretation of the "facts found" language in section 5110(a). However, a determination of the legal limitations on entitlement is not a matter that is ordinarily considered a "fact" subject to "finding." Rather it is an issue of law. *Cf. Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) (holding that a determination about an unsettled question of State law is not a factual issue to be reviewed by an appellate court for clear error, but rather is reviewed de novo). Therefore, the majority's construction is unnatural and I do not believe that the effective date for a secondary condition should be limited to that of the primary condition in the very rare case where a veteran happens to apply for service connection for the secondary condition first.

Not only is this the correct outcome under the law, but it is also more efficient and avoids an unnecessary burden on VA. As the majority opinion notes, *ante* at 6, the appellant argues in the alternative that his peripheral neuropathy should have been granted service connection on a direct basis. Aside from that argument, the appellant could also assert that his diabetes could have been granted service connection on a direct basis. A correct application of the law moots

any need to determine which theory is the more accurate basis for an award of service connection. The majority opinion puts the burden on VA to determine the proper effective date in a case to address difficult issues of direct service connection in cases where presumptive service connection already applies. For these reasons, I would decide this case on this much simpler basis.

Even though I believe the majority's opinion is unnecessarily complicated, I would note for the Board and practitioners that, as I read it, the duty to sua sponte investigate whether a primary condition is related to service is only triggered when the evidence satisfies the *McLendon* standard. *McLendon v. Nicholson*, 20 Vet.App. 79, 81-86 (2006). As I argued in *Shade* and as is stated in *Robinson*, if the evidence is insufficient to grant a claim, then the crucial issue is whether the duty to assist has been triggered. *Shade v. Shinseki*, 24 Vet.App. 110, 124 (Lance, J., concurring); *Robinson v. Peake*, 21 Vet. App. 545, 553 (2008).

There is an unfortunate — and not entirely unfounded — belief that veterans law is becoming too complex for the thousands of regional office adjudicators that must apply the rules on the front lines in over a million cases per year. Whatever the merits of such arguments may be, clear guidance from the courts is a virtue for any system struggling to accurately decide a huge volume of cases. Thus, I encourage readers not to be misled by the apparent complexity of the majority opinion. *See Cohen v. Brown*, 10 Vet.App. 128, 152 (1997) (Nebeker, C.J., "concurring, by way of synopsis"). When it is stripped down to its foundations, it is simply another application of the important standard that defines when the Secretary must obtain additional medical evidence before deciding a claim. Accordingly, I would encourage both the Secretary and practitioners to focus on the *McLendon* standard whenever there is a question about whether an additional theory should have been addressed and investigated regardless of novel facts that may seem to dress up the problem as a new issue.

Although the majority argues that my analysis ignores binding caselaw, *ante* nn. 7, 9, the cases that the majority cites, *Ellington* and *Livesay*, both *supra*, are not controlling as they addressed the regulation but did not address the specific issue that is presented here and therefore, they are not binding on the issue. *See United States v. County of Cook, Illinois*, 170 F.3d 1084, 1088 (Fed. Cir.1999) (stating that prior decisions of the Federal Circuit that did not

squarely address an issue are not binding precedent); *Nat'l Cable Television Ass'n v. Am. Cinema Editors*, *Inc.*, 937 F.2d 1572, 1581(Fed. Cir.1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises.").

Ultimately, the choice to limit the effective date of a claim to the date the claim was filed is an artificial line chosen by Congress to balance compensating veterans with controlling the overall cost of benefits. There is simply no need for the Secretary or the Court to add additional restrictions. In some cases, the overly complicated ruling of the majority will reach the correct result. However, there will still be cases where the claim for service connection is processed separately and becomes final before the secondary condition is identified as such. The majority decision unnecessarily limits the effective date available in such cases, rare as they might be. Accordingly, I respectfully disagree with the majority's rationale.