KASOLD, Chief Judge,
concurring in
the result:
I agree with my colleagues that Mr. Sellers is entitled to an effective date for benefits for his RP disease earlier than February 5, 2004, albeit for different reasons.
Specifically, I cannot agree with the majority’s holding that the Board clearly erred in its supplemental 2011 finding[20] *284 that the June 2004 RO decision was not binding because it was not issued to Mr. Sellers in the normal course of business. The majority hold that, because Mr. Sellers and his representative actually received the June 2004 RO decision and a notification letter, that decision was binding regardless of how he received it. But, the “notification letter” cited by the majority is not addressed to Mr. Sellers, is undated, purportedly awards Mr. Sellers financial assistance in purchasing an automobile, and does not mention an award of benefits based on CUE. Moreover, the claims file only contains the copy sent by Mr. Sellers. There is no indication that this notification was ever issued by the Secretary or that it related to the June 2004 RO decision denying CUE.
Succinctly stated, the Board’s finding that the June 2004 RO decision was not final because it was not issued in the normal course of business is plausible based on the record of proceedings and I do not have a “firm conviction” that the Board erred in that finding. See 38 U.S.C. § 7261(a)(4); Gilbert v. Derwinski, 1 Vet.App. 49, 52 (1990) (“ ‘A finding is “clearly erroneous” when ... the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948))).
I also disagree with the majority’s views that only actual receipt — no matter how transmitted or obtained — matters in determining whether a decision has been issued and is binding. Not only does this view open a pandora’s box of mistakenly released or fraudulently acquired drafts, especially under the Secretary’s current provision that representatives may review decisions before their release, see M21-1, pt. VI, ch. 2, para. 2.05, but the cases cited in support of the majority’s view are inapposite. More specifically, Ashley and Clark found defects in transmission irrelevant to veterans’ assertions that their Notices of Appeal were untimely; they do not find that a decision never transmitted in the normal course of business is binding. See Ashley v. Derwinski, 2 Vet.App. 62, 65 (1992) (claimant arguing that “the 120-day filing period ... did not begin to run ..., because the B[oard] failed to meet its statutory obligation to mail a copy of the decision to her representative”); see also Clark v. Principi, 15 Vet.App. 61, 63 (2001) (claimant arguing that his Notice of Appeal was timely because the Board decision was sent to the wrong address).
Accordingly, I would affirm the 2011 supplemental finding of the Board that the 2004 RO decision was not issued in the normal course of business and therefore is not binding on the Secretary.
On the other hand, because the facts found by the Board do not support its 2008 decision that the 1988 RO decision did not contain CUE, I would reverse the 2008 Board decision. Specifically, the Board found that Mr. Sellers entered service with no indication that he had RP. Although Mr. Sellers’s separation examination also did not reflect that he had RP, the Board noted that he was referred for an optometry consultation examination because of complaints of decreased vision. As the Board found, that in-service eye examination report reflects that (1) Mr. Sellers complained of flashing lights and constricted field of vision, (2) Mr. Sellers had retinal pigment epithelial (RPE) defects, and (3) no pathology was found.[21] The 2008 *285 Board also noted that a 1982 medical report diagnosed Mr. Sellers with RP and explained that RP is characterized by, inter alia, peripheral visual loss and changes in the back wall of the eye. Despite recognizing this record evidence, the Board inexplicably and summarily concluded that the evidence at the time of the 1988 RO decision reflected no competent evidence that RP manifested during service.
The Board further found no evidence of a specific, in-service diagnosis of RP, but it failed to recognize that there is no requirement that a veteran be diagnosed in service for a disease to be service connected. Indeed, the Board’s focus on the timing of the diagnosis — rather than the manifestation of the symptoms — contravenes precedent. See DeLisio v. Shinseki, 25 Vet.App. 45, 56 (2011) (“[E]ntitlement to benefits for a disability or disease does not arise with a medical diagnosis of the condition, but with the manifestation of the condition.... ”).
Moreover, the record reflects that the 1988 RO did not deny benefits because Mr. Sellers did not have RP. Rather, the RO denied benefits because Mr. Sellers’s RP was considered a constitutional or developmental abnormality (CDA) that was inherited and not aggravated in service. See R. at 452 (1988 RO decision stating: “Vet’s [RP] is a CDA, not aggravated in service.”). This view — that Mr. Sellers’s RP was a CDA — was consistent with the Secretary’s view at the time that RP was presumed to be hereditary if there was no evidence otherwise. See R. at 107 (VA Office of General Counsel Opinion 1-85 (Mar. 5, 1985) (reissued as VA Gen. Coun. Prec. 82-90 (July 18, 1990)), stating that “VA adjudicators ordinarily are justified in finding that [a congenital, developmental or familial in origin] disease, by its very nature, preexisted the claimant’s military service”), 122 (VA Gen. Coun. Prec. 11-1999 (Sept. 2, 1999), noting that the M211, ch. 50, para. 50.09(d) (Jan. 3, 1986), instructed that “[i]f no other cause is shown for [RP], consider it to be hereditary, and determine service connection on whether or not there has been aggravation of this preexisting condition during service.”); cf. 38 U.S.C. § 7104(c) (Board is bound by General Counsel opinions).
However, although the Secretary’s presumption that RP is hereditary might be appropriate for many purposes, it cannot be used to defeat the congressionally mandated presumption of soundness. See 38 U.S.C. § 1111. Otherwise stated, because Mr. Sellers entered service without any notation that he had RP, his in-service manifestation of RP is presumed service connected unless it is shown by clear and unmistakable evidence that RP existed pri- or to service and was not aggravated by service. Id. Here, the Board found no evidence, and the record of proceedings reflects no clear and unmistakable evidence, that RP manifested prior to service, and the only medical evidence before the 1988 RO on whether Mr. Sellers had a family history of RP found “no specific evidence of similar problems in other members of your family.” R. at 500 (1982 medical report).
In sum, Mr. Sellers would have been awarded service connection in 1988 but for the RO’s presumption that RP was hereditary. Accordingly, I find the Board’s 2008 determination that the 1988 RO decision did not contain CUE to be arbitrary, capricious, an abuse of discretion, or otherwise *286 not in accordance with law, and I would reverse it — which is the basis for my concurring in the result of the majority’s decision. See Joyce v. Nicholson, 19 Vet.App. 36, 42-43 (2005) (Board decisions on CUE motions are reviewed under the “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law” standard); Fugo v. Brown, 6 Vet.App. 40, 43-44 (1993) (demonstrating CUE requires showing that the outcome would have been manifestly different but for the error); see also Gutierrez v. Principi, 19 Vet.App. 1, 10 (2004) (“[R]eversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board’s decision.”).[22]

. The Board’s 2011 supplemental decision was rendered at the request of the Court and focuses on the processing of Mr. Sellers's request for revision.

. As the majority note, RPE defects are defects of "a layer of pigmented epithelium that is the outer of the two parts of the optic part of the retina ... extending from the entrance *285 of the optic nerve to the pupillary margin of the iris,” and RP is "a group of diseases, frequently hereditary, marked by progressive loss of retinal response ..., retinal atrophy, attenuation of the retinal vessels, and clumping of the pigment, with contraction of the field of vision.” Dorland’s at 1781, 1634.

. One differentiating effect of a Board reversal and remand based on CUE in the 1988 RO decision as opposed to a Board reversal and reinstatement of the 2004 RO decision is that reversal by the Court predicated on CUE in an earlier decision does not permit further revision of that earlier decision by the Secretary. Compare Winsett v. Principi, 341 F.3d 1329, 1331 (Fed.Cir.2003) (holding that CUE may not be brought after an underlying issue has been adjudicated by a court and noting that permitting such action “would allow a lower tribunal to review the decision of a higher tribunal”) with 38 C.F.R. §§ 3.104(a), 3.105(a) (permitting revision of final RO decisions based on CUE).