Citation Nr: 1829352 
Decision Date: 05/29/18 Archive Date: 06/12/18

DOCKET NO. 14-10 834 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to an initial disability rating greater than 10 percent for chronic prostatitis (rated together with previously service-connected urethral scarring as a single disease) as of June 12, 2002; 20 percent as of July 19, 2007, and 40 percent as of September 13, 2013. 

2. Entitlement to a total disability rating based upon individual unemployability due to service-connected disabilities (TDIU) 

3. Entitlement to an effective date earlier than June 12, 2002, for the assignment of a 10 percent disability rating for residual, right kidney nephrolithiasis.

4. Entitlement to an effective date earlier than June 12, 2002, for the grant of service connection for abdominal surgical scars.

5. Entitlement to a higher combined total rating prior to September 13, 2013. 


(The Veteran's appeal of his claim seeking service connection for a blood/immunological disorder is addressed in a separate, concurrently-issued decision.)


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. Bosely, Counsel


INTRODUCTION

The Veteran served on active duty from February 1978 to August 1991. 

These matters originally came before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued in January 2007, July 2013, and October 2013 by a Department of Veterans Affairs (VA) Regional Office (RO).

In November 2015, the Veteran testified at a hearing conducted by the undersigned Veterans Law Judge. 

The Board then remanded this matter in November 2016. 

By a December 2017 rating decision, the RO granted a 10 percent disability rating for residual, right kidney nephrolithias, effective from June 12, 2002. The rating decision also granted an effective date for the award of service connection for abdominal scars, (non painful or unstable) with a noncompensable (zero percent) disability rating effective June 12, 2002. Thus, those issues have been recharacterized as noted on the title page.

In February 2018, the Veteran submitted additional evidence. His representative previously filed a waiver of initial RO consideration of additional evidence in January 2018. See 38 C.F.R. § 20.1304(c).


FINDINGS OF FACT

1. Beginning June 12, 2002, the Veteran's chronic prostatitis did not involve a voiding dysfunction requiring the wearing of absorbent materials which must be changed less than 2 times per day; urinary frequency involving daytime voiding interval between one and two hours, or; awakening to void three to four times per night; obstructed voiding involving urinary retention requiring intermittent or continuous catheterization; or urinary tract infections (UTIs) involving recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management. 

2. From June 29, 2007, to July 12, 2007, the Veteran's chronic prostatitis involved a daytime voiding interval less than one hour, or; awakening to void five or more times per night. 

3. From July 12, 2007, to September 9, 2013, the Veteran's chronic prostatitis did not involve a voiding dysfunction requiring the wearing of absorbent materials which must be changed 2 to 4 times per day; urinary frequency with daytime voiding interval less than one hour, or; awakening to void five or more times per night; obstructed voiding with urinary retention requiring intermittent or continuous catheterization; or UTIs with recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management. 

3. Beginning from September 10, 2013, but not earlier, the Veteran had daytime voiding interval less than 1 hour and nighttime awakening to void 5 or more times, but not a voiding dysfunction requiring the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day.

4. The Veteran's combined service-connected disability picture is not shown to prevent him from securing or following substantially gainful employment consistent with his educational and occupational background.

5. The Veteran filed an original claim of service connection for any condition on June 12, 2002, which is the current effective date for residual, right kidney nephrolithiasis and abdominal surgical scars, and there is no indication of an earlier claim for these disabilities or any others.

6. There is no basis to assign a higher combined disability rating on a single or collective basis. 


CONCLUSIONS OF LAW

1. The criteria for the assignment of an initial compensable rating higher than 10 percent prior to June 29, 2007, higher than 20 percent beginning from July 12, 2007 to September 10, 2013, and higher than 40 percent beginning September 13, 2013, for chronic prostatitis (rated together with previously service-connected urethral scarring as a single disease), are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.115a, 4.115b, Diagnostic Codes (DCs) 7518, 7527 (2017). 

2. The criteria for the assignment of a 40 percent disability rating beginning June 29, 2007, to July 12, 2007, and a 40 percent rating beginning September 10, 2013, for chronic prostatitis (rated together with previously service-connected urethral scarring as a single disease), are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3, 4.3, 4.7, 4.115a, 4.115b, DCs 7518, 7527 (2017). 

3. The criteria for the assignment of a TDIU are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.16 (2017).

4. The criteria for assignment of an effective date prior to June 12, 2002, for the award of a 10 disability rating for residual, right kidney nephrolithiasis are not met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).

5. The criteria for assignment of an effective date earlier than June 12, 2002, for the award of service connection for abdominal surgical scars have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).

6. The criteria for assignment of a higher combined rating prior to September 13, 2013, are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.25 (2017). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Increased Ratings

The Veteran is seeking a higher initial rating for chronic prostatitis (rated together with urethral scarring as a single disease). The appeal period now before the Board begins in June 12, 2002, which is when service connection went into effect for this condition. See Fenderson v. West, 12 Vet. App. 119 (1999). This disability has been assigned a 10 percent rating as of June 12, 2002, a 20 percent rating beginning July 19, 2007, and a 40 percent rating from September 13, 2013. 

A. Applicable Law

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

The Veteran's disability has been assigned a disability rating under DC 7527-7518 of 38 C.F.R. § 4.115b. The hyphenated code signals that the rating has been assigned determined on the basis of residual conditions under DC 7527 under the basic disease listed in DC 7518. See 38 C.F.R. § 4.27. The applicable rating schedule is set forth as follows:


7518 Urethra, stricture of:

Rate as voiding dysfunction.



7527 Prostate gland injuries, infections, hypertrophy, postoperative residuals:

Rate as voiding dysfunction or urinary tract infection, whichever is predominant.



Rating
Renal dysfunction:

Requiring regular dialysis, or precluding more than sedentary activity from one of the following: persistent edema and albuminuria; or, BUN more than 80mg%; or, creatinine more than 8mg%; or, markedly decreased function of kidney or other organ systems, especially cardiovascular
100
Persistent edema and albuminuria with BUN 40 to 80mg%; or, creatinine 4 to 8mg%; or, generalized poor health characterized by lethargy, weakness, anorexia, weight loss, or limitation of exertion
80
Constant albuminuria with some edema; or, definite decrease in kidney function; or, hypertension at least 40 percent disabling under diagnostic code 7101
60
Albumin constant or recurring with hyaline and granular casts or red blood cells; or, transient or slight edema or hypertension at least 10 percent disabling under diagnostic code 7101
30
Albumin and casts with history of acute nephritis; or, hypertension non-compensable under diagnostic code 7101
0
Voiding dysfunction:

Rate particular condition as urine leakage, frequency, or obstructed voiding
 
Continual Urine Leakage, Post Surgical Urinary Diversion, Urinary Incontinence, or Stress Incontinence:

Requiring the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day
60
Requiring the wearing of absorbent materials which must be changed 2 to 4 times per day
40
Requiring the wearing of absorbent materials which must be changed less than 2 times per day
20
Urinary frequency:

Daytime voiding interval less than one hour, or; awakening to void five or more times per night
40
Daytime voiding interval between one and two hours, or; awakening to void three to four times per night
20
Daytime voiding interval between two and three hours, or; awakening to void two times per night
10
Obstructed voiding:

Urinary retention requiring intermittent or continuous catheterization
30
Marked obstructive symptomatology (hesitancy, slow or weak stream, decreased force of stream) with any one or combination of the following:

1. Post void residuals greater than 150 cc.

2. Uroflowmetry; markedly diminished peak flow rate (less than 10 cc/sec).

3. Recurrent urinary tract infections secondary to obstruction.

4. Stricture disease requiring periodic dilatation every 2 to 3 months
10
Obstructive symptomatology with or without stricture disease requiring dilatation 1 to 2 times per year
0
Urinary tract infection (UTI):

Poor renal function: Rate as renal dysfunction.

Recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management
30
Long-term drug therapy, 1-2 hospitalizations per year and/or requiring intermittent intensive management
10

B. Discussion

10 Percent from June 12, 2002

A disability rating higher than 10 percent rating beginning June 12, 2002, is not warranted until June 29, 2007, when the Veteran manifested a 40 percent rating. 

There is no indication of a voiding dysfunction requiring the wearing of absorbent materials which must be changed less than 2 times per day. VA examinations in July 2005 and October 2006 show that he had no problems with urinary incontinence and did not wear absorbent materials. VA medical records from April 2007 to June 2007 indicate urinary leakage as some dribbling. However, there is no indication that he used absorbent materials to manage this symptom. 

There was not urinary frequency involving daytime voiding interval between one and two hours, or; awakening to void three to four times per night until June 2007. He continuously complained of urinary frequency and urgency, including at an October 2002 VA examination. But, at the time of a July 2005 VA examination, he had nocturia at least one time per night and was voiding "normally" every 3-4 hours during the day. He was admitted for treatment of a urinary tract infection in April 2006, at which time he complained of increased frequency in urination and urgency for the past 3 days. But, at an October 2006 VA examination, he complained of nocturia twice per night, and daytime frequency varying, but typically every 3 hours "or so." In April 2007, he complained of nocturia 2 or 3 times. This evidence does not indicate a higher disability level. 

However, at VA Urology on June 29, 2007, he complained of worsening urinary symptoms, including frequency every 30 minutes. He was treated for benign prostate hypertrophy. He then underwent a cystoscopy in July 2007, but he presented to a VA emergency room several days later with complaints of now urinary every 10-15 minutes small amounts. 

The Board notes that a frequency of every 30 minutes and every 10-15 minutes is consistent with the 40 percent disability level involving daytime voiding interval less than one hour, or; awakening to void five or more times per night. Thus, a 40 percent rating is warranted for this specific time period from June 2007 through July 2007. 

It is not entirely clear exactly when this disability level arose. The earlier VA medical record in April 2007 indicated a lesser degree of frequency. Since it is factually ascertainable only from the June 2007 VA medical record, the Board will assign the effective date for the 40 percent rating from that date June 29, 2007. The 40 percent rating is not assignable after July 2007, because this level of severity is not factually ascertainable after the July 12, 2007 emergency room visit. 

There is no indication of obstructed voiding involving urinary retention requiring intermittent or continuous catheterization. The Veteran complained of hesitancy at the October 2002 examination and an April 2004 VA examination. At a July 2005 VA examination, he complained of a sensation that he was not emptying his bladder when he urinated. In April 2007, he complained of a weak stream, difficulty getting his stream started. At the July 2007 cystoscopy, there was "no real stricture" found. At the July 2007 emergency room visit, the Veteran complained of incomplete bladder emptying, but a bedside ultrasound found no evidence of urinary retention. This evidence shows that the Veteran voiced complaints indicating a perception of urinary retention, but no actual obstructed voiding was found. There were no catheterizations. 

Finally, there were no UTIs involving recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management. He was admitted for a UTI in April 2006, and a UTI was found at the July 2007 emergency room visit. There are otherwise no hospitalizations for UTI during this time. Accordingly, the evidence does not show recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management.

Accordingly, for this time period, the Board finds that a 40 percent rating is warranted from June 29, 2007 through July 12, 2007, but not higher. 

20 Percent from July 19, 2007

A disability rating in excess of 20 percent is not warranted for the time period beginning July 19, 2007. 

There was not a voiding dysfunction requiring the wearing of absorbent materials which must be changed 2 to 4 times per day. He continued to complain of dribbling, such as at a December 2012 VA examination. However, a September 2013 VA examination shows no leaking or use of an appliance. 

There was not urinary frequency with daytime voiding interval less than one hour, or; awakening to void five or more times per night. At a July 2007 VA examination, the Veteran complained of getting up four times per night. During treatment in August 2008, he complained of ongoing frequency and nocturia (details were not provided). In December 2007, he complained of some difficulty emptying his urinary bladder at night with nocturia 3 times, plus he "thinks he has frequency during the day." In October 2011, he complained of urinating "ok." At a December 2012 VA examination, he complained of frequency and nocturia 3-4 times per night and 1-2 hours per day. Then at VA in May 2013, he complained of frequency and slow stream, but this "doesn't seem as bad as before," and the assessment was lower urinary symptoms. This evidence shows that the Veteran's symptoms did not involve urinary frequency with daytime voiding interval less than one hour, or; awakening to void five or more times per night.

On September 10, 2013, the Veteran underwent another VA examination. The VA examination reports that the Veteran had daytime voiding interval less than 1 hour and nighttime awakening to void 5 or more times. These symptoms meet the criteria for a 40 percent rating, and the current 40 percent rating is assigned based on this examination. Unfortunately, the RO assigned an incorrect effective date. The October 2013 rating decision, which assigned the 40 percent rating, states that this VA examination was performed on September 13, 2013, instead of September 10, 2013. The Board will, therefore, grant the effective date for the 40 percent rating from September 10, 2013. This will not result in any additional compensation payments to the Veteran. See 38 C.F.R. § 3.31. 

Moreover, the 40 percent rating cannot be assigned earlier than September 10, 2013. It is not clear exactly when the 40 percent disability arose. As indicated, the May 2013 consultation indicated a lower degree of symptomatology. Thus, it would appear that the 40 percent disability level arose at some point between the May 2013 consultation and the September 2013 VA examination. Based upon this evidence, the earliest that it can be factually ascertained that he met the criteria for the 40 percent is September 10, 2013, the date he was examined. Therefore, the 40 percent rating cannot be assigned prior to that date. 

Otherwise, a rating higher than 20 percent is not warranted prior to September 10, 2013. There is no showing of obstructed voiding with urinary retention requiring intermittent or continuous catheterization. In December 2007, he complained of some difficulty emptying his urinary bladder at night. He voiced similar complaints in October 2009 and December 2012 (VA examination). The September 2013 VA examination indicated urinary retention requiring intermittent catheterization. However, the factual basis for this statement is not cited, and the medical records do not document any catheterizations during this time period where it appears reasonable to assume that such would have been recorded if present. Thus, the evidence does not support a finding of urinary retention requiring intermittent or continuous catheterization.

Finally, the Veteran had UTIs, but not recurrent symptomatic infections requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management. He was taking medication for a UTI at the time of the September 2007 VA examination. At a VA emergency room in August 2007, it was noted that he had been on medication for 10 more days due to a recurrent UTI. Later in August 2007, the Veteran reported that this medication "helped for awhile." His primary care provider at VA in October 2009 noted the history of medication 2 years prior after which he "has done well since." 

There were not documented UTIs between September 2007 and October 2009. In fact, the December 2012 VA examiner noted that the Veteran had not recurrent symptomatic UTIs. A January 2013 VA examiner noted a history of recurrent UTIs from possible prostatitis with long-term drug therapy, but none in past 12 months. The September 2013 VA examination also indicated that the last course of medication was in 2007. Thus, the evidence does not show recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management. 

Accordingly, for this time period, the Board finds that a 40 percent rating is warranted from September 10, 2013, but no higher rating is warranted earlier than that date. 

40 Percent from September 10, 2013

Beginning from September 10, 2013, the rating schedule only provides for a disability rating higher than 40 percent if there is a voiding dysfunction requiring the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day. See 38 C.F.R. § 4.115b. 

The September 2013 VA examination reports that the Veteran had no leakage or use of an appliance. At a June 2015 VA examination, the Veteran reported that his urinary symptoms were "nearly perfect." At VA Urology consultations in September 2015, December 2015, and June 2016, the Veteran did not have voiding difficulties. At a December 2015 VA examination, the Veteran reported leaking after urination during the day. He did not report appliance or absorbent material use. Thus, overall, there is no indication of a voiding dysfunction requiring the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day. Consequently, there is no basis to assign a rating higher than 40 percent. 

Of final note, the Veteran's representative argued at the November 2015 Board hearing his disabilities were worse than the 50 percent rating assigned because they had been progressively getting worse. Board Hr'g Tr. 12. The Board finds that a new VA examination is not needed because, in context, the Veteran's representative was arguing for a higher combined disability rating. Furthermore, the representative was arguing that the disabilities had been getting worse over time. The representative was not arguing that the disabilities had become worse since the last VA examination specifically. Accordingly remand for a new VA examination is not needed. See 38 C.F.R. §§ 3.326, 3.327 (2015); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997); VAOPGCPREC 11-95 (1995). 

Conclusion

In sum, higher or earlier ratings are warranted as described above for service-connected prostatitis. The preponderance of the evidence is against any other or higher or earlier ratings; thus, the benefit-of-the-doubt doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. Therefore, additional higher or earlier ratings are not warranted for prostatitis.


II. TDIU

In his May 2006 VA Form 21-8940, the Veteran wrote that he last worked full-time and became too disabled to work in May 2000, which is also when his disabilities first affected full-time employment. The disabilities preventing him from securing or following any substantial gainful employment were an autoimmune condition, kidney and liver damage, urinary tract condition, viral syndrome/blood disorder, and hernia. He had two years of college education, plus was a Coast Guard licensed engineer with various training associated with engineering. 

The Veteran's primary contention is that he cannot work around others because they might make him sick due to his blood disorder. See Board Hr'g Tr. 7. 

A. Applicable Law

Under the applicable criteria, total disability ratings based on individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more service-connected disabilities, provided that one of those disabilities is ratable 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). 

It is also the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue. 38 C.F.R. § 4.16(b). The Board is required to obtain the Director's decision before it may award extraschedular TDIU. Wages v. McDonald, 27 Vet. App. 233, 236 (2015).

B. Discussion

In this case, the Board concludes that a TDIU is not warranted as the evidence does not show that the Veteran's combined service-connected disability picture precludes him from securing or following substantially gainful employment consistent with his educational and occupational background.

The Veteran is service-connected for (1) residuals of urethral scarring and chronic prostatitis incisional hernia, residual of surgery in 1979; (2) abdominal adhesions; (3) residual, right kidney nephrolithiasis; (4) abdominal surgical scars; (5) abdominal scar, non painful or unstable associated with incisional hernia, residual of surgery in 1979. 

With regard to these disabilities, he did not work for wages during the appeal period, and the evidence shows some degree of functional limitations impacting his ability to work. However, this is not shown to be an incapability to work more than marginal employment. 

For example, at an October 2002 VA examination, the Veteran complained of pain initially with running upstairs or jogging, plus had pain with car riding. According to a May 2006 SSA Function Report, the Veteran's medical conditions forced him to maintain a moderate level of activity. At a June 2006 SSA psychiatric evaluation, the Veteran reported that he could not sustain work beyond 20 minutes due to his kidney condition and pain. At a different SSA examination in June 2006, the Veteran complained of staying weak and tired all the time. A January 2008 SSA Function Report indicates severe limitations to physical activities with lifting affected by hernia from surgery. 

Similarly a December 2012 VA Kidney examination shows complaints of not lifting much for fear of pain, and he had adjusted his lifestyle to avoid any significant lifting. The VA examiner concluded that the hernia caused an impact on his ability to work in that his scar would impair his ability to lift heavy items or drive for prolonged periods due to his scar being irritated and occasionally the hernia popping out. This caused a functional impairment involving inability to lift heavy objects, run, or do any significant exertional activity due to his abdominal scar, more specifically the popping out of his incisional hernia. Also, he did not lift heavy items and could not participate in any significant exertional activities. 

By comparison, a January 2013 VA examiner found that there was no functional impact as the "[s]mall ventral hernia appeared operable and remediable, no indication for supporting belt, no functional impact." In September 2013, a VA examiner likewise found that a review of the medical records did not show any limitations concerning his activities as related to the service-connected conditions. The examiner explained that the Veteran may need to limit prolonged driving, long periods of standing and heavy lifting, but these restrictions did not preclude all employment types.

Again in December 2015, a Kidney VA examiner found that the condition did not impact his ability to work. Most recently, in November 2017, a VA examiner reviewed his case and likewise found that there was not an inability to adhere to activities of daily living and/or employment because of the lack of any significant systemic and/or extremity functional loss, baseline of severity and/or degree that demonstrated pulling pain on attempting work or aggravated by movements of the body, or occasional episodes of pain, nausea, constipation (perhaps alternating with diarrhea) or abdominal distension, partial obstruction within the abdominal and/or genitourinary moieties.

This evidence shows there were some functional limitations associated with the service-connected disabilities, including pain during such activities as walking up stairs and riding in cars. He also had difficulty with lifting heavy objects. 

Notwithstanding these functional limitations, the Veteran performed work consistent with a job, which demonstrates an ability to undertake the activities needed to maintain substantially gainful employment. He indicated at his November 2015 Board hearing that he stopped working due to economic factors and not his medical disabilities. Board Hr'g Tr. 10-11. 

A February 2004 VA Psychiatric examination shows that he had increased his woodworking hobby. At VA in April 2005, he reported planting a few fruit trees and doing a lot of digging the day prior. In April 2006, he had again been planting fruit trees. In an SSA Function Report, he wrote that he maintained his own house and farm. At a June 2006 SSA examination, he reported sitting watching a computer. A January 2008 SSA Function Report indicates that he could do one hour of house and yard work, but his hobbies included agriculture, fruiting trees and vines. At VA Rheumatology in March 2008, he reported working a 120 acre farm on which he raised chickens and planned to grow a vineyard. Again in October 2011, he was noted to work a farm. An August 2015 VA examination addendum shows that the Veteran was working on a cemetery refurbish project, which required him to kneel down and come back up. He was also noted to continue being able to mow his lawn and do yard work, plus was walking his dog an hour a day for exercise. 

The Board finds based on this evidence that, even though his disabilities limited his ability to engage in physical labor for long periods of time, his ability to work a farm is consistent with substantially gainful activity. It shows that he could manage and conduct the activities of a farm. This would not require a degree of physical functioning to carry out the job functions outside of his capacity because the evidence indicates that he has already been performing such activities since at least July 2005. 

Even if he were to be found unemployable, the evidence shows that this resulted primarily from a blood disorder in addition to a nonservice-connected neck condition and the service-connected disabilities. Nonservice-connected conditions are not for consideration when addressing TDIU.

For instance, at a May 2006 VA Vocational Rehabilitation assessment, the Veteran reported that he worked as a day trader on the stock market until May 2000, when he became ill from a previous autoimmune condition and "when he started getting sick things significant changed in his life." He explained that this illness began affecting his ability to work. A combination of his nonservice-connected and service-connected disabilities was listed as affecting his inability to engage in significant physical exertion, increased in urination, inability to remain in a fixed position for extended periods of time, inability to engage in heavy lifting, and exposure to stressful situations. 

He applied for SSA disability benefits in May 2006. He identified limitations from his hernia and a neck condition, and a June 2006 SSA psychiatric evaluation notes that he was applying for disability benefits due to an autoimmune disorder, which begin in approximately 2000, and chronic urinary tract problems. At a June 2006 SSA examination, the Veteran's complaints included neck pain if sitting and watching a computer. 

In April 2009, the Veteran inquired about the Compensated Work Therapy program at the VA hospital. His physician was "reluctant to clear him for work in an environment where MRSA and VRE and similar organisms are common place" which was "[d]ue to undiagnosed problems with his immune system." 

Moreover, the Veteran himself has asserted that it is a combination of his nonservice-connected and service-connected disabilities that limit his employability. At his Board hearing, he described the impairments caused by his blood disorder, his kidney, and his prostate disabilities. He stated that it was "the prostatitis, antibiotics, scar tissue, erectile dysfunction, you know, the whole complex of things." Board Hr'g Tr. 11. However, his primary contention was that "I really can't be around anybody that's got a cold. I'm kind of terrified of getting the flu or something." Board Hr'g Tr. 10. 

He is not currently service connected for a neck or blood (immune) disorder. The Board herein below is remanding the claim of service connection for a blood disorder. However, the instant TDIU issue is not intertwined with the remanded issue. See Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997) (an NOD with respect to service connectedness cannot initiate appellate review of the downstream element of compensation level); Vargas-Gonzalez v. Principi, 15 Vet. App. 222, 228-29 (2001) ("a claimant's NOD cannot express disagreement with an issue that has not been decided"). Should service connection eventually be granted for a blood disorder or any other condition, the Veteran may re-apply for a TDIU based upon that newly service-connected disability. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009); see also, e.g., Sharp v. Shinseki, 23 Vet. App. 267 (2009) (entitlement to additional compensation for dependents is premised on any rating decision establishing compensation at the qualifying level). 

To summarize, the evidence overall indicates that the Veteran has functional impairments impacting his ability to work. However, he has continued to engage in employment-type activities at a level indicative of more than marginal employment. Furthermore, any functional impairment impacting his ability to work is due to a combination of his service-connected and nonservice-connected disabilities. 

For these reasons, a preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable, and a TDIU is not warranted. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

III. Effective Dates

Background

The Veteran is currently assigned an effective date of June 12, 2002, for the award of service connection for his (1) residual, right kidney nephrolithiasis, and (2) abdominal surgical scars. 

Service connection for these disabilities was originally granted by the Board in a June 2013 decision. The RO implemented the decision in a July 2013 rating decision, which assigned initial disability ratings for the kidney disability effective from November 2005, and for the scars from December 2012. The Veteran disagreed with the effective dates in an August 2013 NOD. He wrote that the kidney disability "has been an issue since 2002." He also wrote that the scars issue "was raised at an earlier date." 

More recently, in the December 2017 rating decision, the RO assigned an effective date from June 12, 2002, for both disabilities. In a February 2018 appellate brief, the Veteran's representative stated that this rating decision resolved the earlier effective date issue. 

Thus, the Veteran has indicated in his NOD that a 2002 effective date was warranted, which has been assigned by the RO. The representative stated that the issue was resolved. It is not clear, however, that the December 2017 rating decision satisfied the Veteran's appeal for both issues. Nor has the Veteran, notwithstanding the representative's appellate brief, given a withdrawal of the issue that is explicit, unambiguous, and demonstrated to have been done with a full understanding of the consequences of such action on his part. Warren v. McDonald, 28 Vet. App. 214, 218 (2016) (citing DeLisio v. Shinseki, 25 Vet. App. 45, 57 (2011)).

As such, the Board will proceed with a decision on the issues. 

Analysis

The effective date of an award based on an original claim or a claim reopened after final adjudication shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400; Rodriguez v. West, 189 F.3d 1351, 1354 (Fed. Cir. 1999).

A specific claim in the form prescribed by VA must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 U.S.C. §5101(a)); 38 C.F.R. § 3.151. A "claim" is a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p). The benefit sought must be identified, though it need not be specific. See Servello v. Derwinski, 3 Vet. App. 196, 199 (1992); see also Brokowski v. Shinseki, 23 Vet. App. 79, 86-87 (2009). 

In this case, an earlier effective date is not warranted. The Veteran filed an original claim of service connection for any condition on June 12, 2002, the current effective date for both disabilities at issue. As this is the earliest claim in the file, and it is more than one year after separation from service, this is the earliest possible effective date. To this extent, the claims file includes a statement from the Veteran dated in May 2002, which could be indicative of an earlier claim. However, the statement reflects a VA date-stamp in July 2002. There is no indication that the Veteran attempted to mail this May 2002 statement earlier or that the normal channels of mail were delayed between May 2002 and July 2002. See, e.g., 38 C.F.R. §§ 3.1(r); 20.305(a). Therefore, there is no basis to assign an earlier effective date on the basis of this May 2002 statement. 

In short, an earlier effective date for the assignment of a 10 percent disability rating for residual, right kidney nephrolithiasis, and for the grant of service connection for abdominal surgical scars is not warranted.

III. Combined Rating

The Veteran contends that a higher combined disability rating is warranted for his service-connected disabilities. 

As his representative argued at the November 2015 Board hearing, the Veteran maintains that his disabilities were worse than the 50 percent rating assigned because they had been progressively getting worse. Board Hr'g Tr. 12. The Veteran argued that the RO did not assign a correct effective date for a kidney disability. Board Hr'g Tr. 12-13. He contended that a June 2013 Board decision assigned a 10 percent rating back to 2002, but the RO did not assign the correct effective dates after the Board decision. See Board Hr'g Tr. 12, 14. At his Board hearing, the Veteran also argued that "at the very minimum, the 20 percent for the prostatitis would go to 2006 because that was a VA doctor in the VA Hospital said chronic prostatitis in 2006." Board Hr'g Tr. 12, 15. 

As explained above, there is no legal basis to award a 10 percent rating earlier than June 2002 for his kidney disability. At the time of the November 2015 Board hearing, the 10 percent rating was assigned from November 2005. Thus, the Veteran was correct that, when properly implementing the Board's June 2013 decision, he was entitled to a higher combined rating. At present, however, the effective date has been properly assigned from June 2002. 

The Veteran also argued for an earlier effective date for the award of a 20 percent rating for prostatitis. That issue has been decided herein above. 

Currently, the Veteran's combined disability ratings, when taking into consideration the higher ratings assigned by the Board herein above, are as follows:

 40 percent from 6/12/2002 to 6/28/2007
 60 percent for 6/29/2007 to 7/12/2007
 50 per from 7/13/2007 to 9/12/2013
 70 percent since 9/13/2007

A higher combined rating cannot be assigned as the combination of ratings is set forth in the table in 38 C.F.R. § 4.25. Except for the rating and effective dates decided herein, the Board does not have jurisdictional authority to otherwise address the propriety of the individual ratings or effective dates assigned for his disabilities. Accordingly, a higher combined disability rating is not warranted in this case. 


ORDER

A 40 percent rating beginning June 29, 2007, to July 12, 2007, and a 40 percent rating beginning September 10, 2013, for chronic prostatitis (rated together with previously service-connected urethral scarring as a single disease), is granted. 

An initial compensable rating higher than 10 percent prior to June 29, 2007, higher than 20 percent beginning from July 12, 2007 to September 10, 2013, and higher than 40 percent beginning September 10, 2013, for chronic prostatitis (rated together with previously service-connected urethral scarring as a single disease), is denied.

A TDIU is denied.

An effective date earlier than June 12, 2002, for the assignment of a 10 percent disability rating for residual, right kidney nephrolithiasis is denied.

An effective date earlier than June 12, 2002, for the award of service connection for abdominal surgical scars, is denied. 

A higher combined rating prior to September 13, 2013, is denied. 




____________________________________________
RYAN T. KESSEL 
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs