﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/20 Archive Date: 09/30/20

DOCKET NO. 190318-4936
DATE: September 30, 2020

ORDER

Entitlement to an initial disability rating in excess of 50 percent prior to March 12, 2018 for bilateral hearing loss is denied.

Entitlement to a total disability rating for compensation purposes based on individual unemployability (TDIU) is denied. 

FINDINGS OF FACT

1. Throughout the relevant rating period, the Veteran's bilateral hearing loss has been manifested by no worse than Level VIII hearing in the right ear and no worse than Level IX hearing in the left ear.

2. The most probative evidence of record does not demonstrate that it is at least as likely as not that the Veteran's service-connected disabilities render him unable to secure or follow a substantially gainful occupation during the period on appeal.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an initial rating in excess of 50 percent for bilateral hearing loss prior to March 12, 2018 have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.85, 4.86, Diagnostic Code 6100, and Tables VI, VIA, and VII.

2. The criteria for entitlement to a TDIU have not been met during the period on appeal. 38 U.S.C. §§ 1155, 5103A, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.16(b).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active service from February 1981 to February 1984.

The Board notes that the rating decision on appeal was issued in July 2016. In July 2018, the Veteran elected the modernized review system. 38 C.F.R. § 19.2(d). Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the claim of entitlement to a higher initial rating for bilateral hearing loss prior to March 12, 2018, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

The Board will briefly recount a procedural history. A July 2016 legacy RO decision granted entitlement to service connection for bilateral hearing loss, with an effective date of December 30, 2015. A timely Notice of Disagreement (NOD) was filed in December 2016. The Board interprets that NOD to constitute a timely NOD for the issues of entitlement to a higher initial rating and an earlier effective date for bilateral hearing loss. In March 2018, the RO informed the Veteran that they construed a February 2018 correspondence as a withdrawal of the issues. However, the Board finds that the February 2018 correspondence was not a proper withdrawal of the issues. Delisio v. Shinseki, 25 Vet. App. 45 (2011).

The Veteran selected a supplemental claim when he opted into the Appeals Modernization Act (AMA) review system when he submitted a in July 2018. The Board notes that it has construed the July 2018 election for “all eligible issues currently on appeal” to include both the issues of entitlement to a higher initial rating for bilateral hearing loss and entitlement to an earlier effective date for the grant of service connection, as those issues were not withdrawn, were subject to a timely NOD, and had not yet been addressed by a Statement of the Case. 

A February 2019 AMA rating decision adjudicated the issue of entitlement to a higher initial rating for bilateral hearing loss. The Veteran then timely appealed the rating decision to the Board in a March 2019 VA Form 10182 and selected the Direct review docket. As such, the Board may consider the evidence of record at the time the Veteran received notice of the February 2019 AMA decision in its decision.

As discussed above, the Veteran filed a supplemental claim in July 2018. The AOJ did not adjudicate the issue of entitlement to an earlier effective date for the grant of service connection for bilateral hearing loss included in that July 2018 claim. Therefore, the Board cannot adjudicate that issue. The appellant may resubmit the claim to the AOJ or notify the AOJ that the issue is still pending.

The issues of entitlement to a TDIU has been raised pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009). 

1. Entitlement to an initial disability rating in excess of 50 percent prior to March 12, 2018 for bilateral hearing loss is denied.

The Veteran contends that his hearing loss is worse than the assigned ratings. The Board notes that the Veteran’s bilateral hearing loss is rated at 50 percent disabling from December 30, 2015 to March 12, 2018, and at 100 percent disabling therefrom. Thus, the Board need not consider the Veteran’s disability rating after March 12, 2018 as the Veteran is in receipt of a maximum rating. The Board will consider evidence from the date of service connection. 

Ratings for hearing loss range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of speech discrimination tests combined with the average puretone threshold levels as measured by puretone audiometry tests at the frequencies 1000, 2000, 3000, and 4000 Hertz. To rate the degree of disability for service-connected hearing loss, the Schedule has established eleven auditory acuity levels, designated from level I, for essentially normal acuity, through level XI, for profound deafness. 38 C.F.R. § 4.85 (h), Table VI. To establish entitlement to a compensable rating for hearing loss, it must be shown that certain minimum levels of the combination of the percentage of speech discrimination loss and average puretone decibel loss are met. The assignment of disability ratings for hearing impairment is derived by a mechanical application of the Schedule to the numeric designations assigned after audiometric evaluations are rendered. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). 

The criteria for rating hearing impairment use the results of puretone audiometry tests together with the results of controlled speech discrimination tests, using the Maryland CNC test. Results of those tests are charted on Table VI and Table VII as set out in the Schedule. Table VIA, which allows for rating based only on puretone threshold averages, is used instead of Table VI when an examiner certifies that the use of speech discrimination testing is not appropriate or when there is an exceptional pattern of hearing impairment. 38 C.F.R. § 4.85 (c). 

An exceptional pattern of hearing loss occurs when the puretone threshold at each of the specified frequencies of 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more, or when the puretone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or greater at 2000 Hertz. 38 C.F.R. § 4.86.

Turning to the relevant evidence of record, a July 2016 VA examination found that the Veteran’s hearing loss made it difficult to hear conversations, use the phone, and listen to the television. The examiner noted the use of hearing aids. The VA audiological examination recorded pure tone thresholds, in decibels, as follows:

 

       HERTZ     

  1000 2000 3000 4000 Avg.

RIGHT  65 70 80 90 76

LEFT  55 65 85 90  74

Maryland CNC speech discrimination ability was reported as 54 percent in the right ear and 44 percent in the left ear. Applying the Veteran’s exceptional pattern of hearing loss to Table VIA yields lower numerals than Table VI. Thus, it is most favorable to the Veteran to use Table VI. Applying these results to Table VI in 38 C.F.R. § 4.85 yields a finding of Level VIII hearing loss in the right ear and Level IX hearing loss in the left ear. Level VIII hearing loss in the right ear and Level IX hearing loss in the left ear warrants a 50 percent rating pursuant to Table VII, Diagnostic Code 6100.

A March 2017 VA audiology visit showed a puretone threshold average of 78 in the right ear and 80 in the left ear. Word recognition scores were noted to be 36 percent in the right ear and 29 percent in the left. However, the audiogram report states that it is not adequate for rating purposes, and does not use the Maryland CNC word list. 

A July 2017 VA examination found a puretone threshold average of 79 in the right ear and 96 in the left ear. Maryland CNC speech discrimination was 32 percent in the right ear and 0 percent in the left ear. However, the examiner noted that the test results were not valid for rating purposes as the Veteran was inconsistent and a Stenger test was positive. 

As both tests were noted to be invalid, the Board affords no probative weight to the puretone thresholds and speech recognition scores from March 2017 and July 2017. As such, the Board affords great probative weight to the findings of the examiner who conducted the July 2016 VA audiogram.

To the extent that the Veteran and lay witnesses contend that his bilateral hearing loss is more severe than reflected by his disability rating, the Board observes that the Veteran can attest to factual matters of which he has first-hand knowledge and understanding as a lay person, such as difficulty understanding conversation. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); see also Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, he is not competent to state, and lay witnesses have not been shown to be competent to state, that his hearing acuity is of a severity sufficient to warrant a higher rating under VA’s tables for rating hearing loss disabilities as such an opinion requires medical expertise and knowledge that he and his lay witnesses have not been shown to possess. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Accordingly, the Board attaches more probative weight to the medical records and clinical findings from the skilled medical professionals who conducted the VA audiological examinations of record, rather than to the Veteran’s statements. Moreover, the assignment of disability ratings for hearing loss is primarily based upon a mechanical application of the rating criteria, as explained and applied in this decision. In this case, the clinical evidence of record, when mechanically applied to the rating criteria, simply does not show that a rating in excess of 50 percent is warranted. The most probative evidence of record shows that throughout the relevant rating period, the Veteran's bilateral hearing loss has been manifested by no worse than Level VIII hearing in the right ear and no worse than Level IX hearing in the left ear. As the preponderance of the evidence is against the assignment of a higher initial rating, the benefit-of-the-doubt doctrine is not applicable, and the claim must be denied. 38 U.S.C. § 5107 (b). 

Neither the Veteran nor his representative has raised any other issues with regard to the rating for the service-connected bilateral hearing loss, nor have any other such issues been reasonably raised by the record. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016); Doucette v. Shulkin, 28 Vet. App. 366 (2017).

2. Entitlement to a TDIU is denied.

The issue of entitlement to a TDIU has been raised as part and parcel to the Veteran’s claim for a higher initial rating for hearing loss. The relevant period for appellate consideration mirrors that of the Veteran’s claim for a higher rating, December 30, 2015 to March 12, 2018, as TDIU is moot after March 12, 2018 due to the Veteran’s 100 percent rating for bilateral hearing loss and his receipt of special monthly compensation under 38 U.S.C. § 1114 (s). 

A TDIU may be granted where a veteran is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or higher, or as a result of two or more service-connected disabilities, provided at least one disability is ratable at 40 percent or higher, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16 (a). Consideration may be given to a veteran's level of education, special training, and previous work experience, but not to his or her age or to impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19. 

Even if the Veteran's service-connected disabilities do not meet the percentage standard, it is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, in the case of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet these schedular percentage standards, the case should be submitted to the Director, Compensation and Pension Service, for extra-schedular consideration. The Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. See 38 C.F.R. § 4.16 (b).

Substantially gainful employment is defined as work that is more than marginal and that permits the individual to earn a living wage. See Moore v. Derwinski, 1 Vet. App. 356 (1991). Marginal employment shall not be considered substantially gainful employment. 

The determination of whether a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability is a factual determination rather than a medical question. Therefore, responsibility for the ultimate determination of whether a veteran is capable of securing or following substantially gainful employment is placed on the VA, not a medical examiner. Geib v. Shinseki, 733 F. 3d 1350, 1354 (Fed. Cir. 2013); see also 38 C.F.R. §§ 4.16; Floore v. Shinseki, 26 Vet. App. 376, 381 (2013).

During the relevant rating period, the Veteran is service connected for bilateral hearing loss, rated at 50 percent disabling, tinnitus rated at 10 percent disabling, and depression rated at 50 percent disabling, beginning on February 27, 2017. The Veteran’s combined rating was 50 percent prior to February 27, 2017 and 80 percent therefrom. The Veteran does not meet the schedular requirements for a TDIU prior to February 27, 2017, but meets them for the period after that date. The question before the Board, whether for the purposes of adjudicating entitlement to a TDIU or in deciding whether the matter should be sent to the Director of Compensation and Pension Service is whether the Veteran’s service-connected disabilities render him unable to secure and follow a substantially gainful occupation.

Turning to the relevant evidence of record, the Veteran has alleged that he is unable to work due to bilateral hearing loss and depression. The Veteran has only alleged, however, that he became unable to work on June 12, 2016. The Veteran reports having finished high school and has work experience as a welder and mechanic. He alleges that his disabilities have caused him to lose jobs because he was unable to hear his supervisor or he misheard instructions and made mistakes. 

At his July 2016 VA hearing examination, the Veteran reported that his hearing loss caused difficulty hearing conversations, using the phone, watching television, and hearing directions at work. The Veteran was noted to use hearing aids. A February 2017 VA examiner opined that the Veteran’s hearing loss does not render him unable to secure and maintain substantially gainful employment. The examiner stated that although the Veteran has significant hearing loss with word recognition difficulties, he should still be employable. The examiner further stated that while not all employment situations would be suitable for the Veteran due to his hearing loss, he would not be precluded from employment because the examiner dealt with individuals on a weekly basis that have significant hearing loss who excel in their employment situations. A July 2017 VA examiner noted that the Veteran reported his hearing impacted his ability to interact with others. With regard to the Veteran’s psychiatric disability, the Veteran underwent a VA examination in December 2018. The examiner found the Veteran had an occupational and social impairment manifest by reduced reliability and productivity. The Veteran had symptoms that would be likely to impact his work function, such as impaired impulse control, impaired judgment, and difficulty establishing and maintaining effective work relationships. 

Vocational rehabilitation records from November 2016 noted that the Veteran had reported being terminated from 7 jobs in 5 years. The vocational counselor stated that the Veteran’s service-connected disabilities, then hearing loss and tinnitus, significantly limit his ability to obtain and retain suitable employment. The counselor noted difficulty with communication, work tolerance, interpersonal skills, and work skills. The counselor stated the Veteran was precluded from working in positions that require customer service, communication in select environments, physically demanding jobs, and positions that require a lot of direction. A December 2016 vocational rehabilitation note found the Veteran’s vocational goals not feasible, but did not attribute such impairment to the Veteran’s service-connected disabilities. The Board further notes that the Veteran contended that his tinnitus impacted his balance in a February 2018 examination. 

The Board finds that the most probative evidence of record does not show that the Veteran’s service-connected disabilities preclude him for securing and maintaining a substantially gainful occupation in consideration of his work and education history at any point during the period on appeal. The record reflects that the Veteran has past training as a welder. While he may have difficulty hearing and communicating, as well as difficulty with interacting with coworkers, the Board finds that the Veteran’s service-connected disabilities would not preclude work in a more isolated setting where the Veteran was not in a public-facing role. The Board acknowledges the vocational counselor’s opinion that the Veteran would have significant work impairment, however, more probative weight is afforded to the opinion of the February 2017 VA examiner with regard to impairments caused by hearing loss. The November 2016 vocational counselor’s notes seemingly found that the Veteran would be precluded from physical work, without indicating what service-connected disability would cause physical limitations. Further, the counselor did not address the many accommodations that are available for the hearing impaired that would not amount to a sheltered work environment. The Board notes that even were the Veteran completely deaf, he would not be precluded from substantially gainful employment solely due to that condition given his prior work and education. The Board acknowledges the Veteran’s contentions with regard to his ability to work. However, the Board does not afford the Veteran’s statement’s probative weight with regard to being fired due to inability to hear. Accordingly, the preponderance of the evidence is against a finding of entitlement to a TDIU the benefit-of-the-doubt rule is not for application, and the claim must be denied. See 38 U.S.C. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

 

T.D. JONES

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Baker, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.